**COLSON SERVICES CORP., Plaintiff,**

v.

**The BANK OF BALTIMORE, individually, and as Successor in Interest to Metropolitan Federal Savings and Loan Association, Defendants.**

No. 88 Civ. 6384 (RLC).

United States District Court,
S.D. New York.

May 15, 1989.

Maione & Collins, New York City (Kathryn Dalli, of counsel), for plaintiff.

Sullivan, Donovan, Hanrahan & Silliere, New York City (Thomas J. Bonner, of counsel), Piper & Marbury, Baltimore, Md. (C. Lamar Garren, Dawna M. Cobb, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

This case involves an alleged double payment of principal and interest to the purchaser of a participation in a jumbo certificate of deposit (the "CD"). Both parties in the action are successors in interest to the entities that actually engaged in the transaction. The plaintiff, Colson Services Corp. ("Colson"), is the successor in interest to Fidata Securities Management Incorporated ("FSMI"), the company which serviced the transaction on behalf of the seller of the participation. The defendant, The Bank of Baltimore (the "Bank") is the successor in interest to Metropolitan Federal Savings & Loan of Bethesda, Maryland ("Metropolitan"), the purchaser of the participation. Colson alleges that FSMI made duplicate payments of principal and interest to Metropolitan, which the Bank refuses to repay. The Bank has moved for dismissal on the grounds that the court lacks personal jurisdiction over it.

■ Within constitutional bounds, the reach of the court's personal jurisdiction is determined by New York law. *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963). The burden of proving jurisdiction is on the party asserting it. *Lehigh Valley Industries, Inc. v. Birenbaum* 527 F.2d 87, 92 (2d Cir.1975). The nature of that burden, however, depends on the "procedural path the district court chooses to follow" in deciding the jurisdictional question, a matter which is left to the court's discretion. *Cutco Industries v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986). If the court chooses to hold an evidentiary hearing, a preponderance of the evidence rule applies; but if the issue is decided on the basis of written submissions and pleadings, a *prima facie* showing of personal jurisdiction is all that is required, with the submissions and pleadings being considered in the light most favorable to the party asserting the jurisdictional claim.

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

■ The Bank claims that because it is "merely a successor to Metropolitan," Colson "must show that the court would have had personal jurisdiction over Metropolitan in order to prove that it has jurisdiction over The Bank of Baltimore." Memorandum of Law in Support of Motion to Dismiss Complaint (hereinafter "Def. Mem.") at 3 n. 2.

No authority is cited for this proposition. Instead, the Bank cites cases in which the question decided was whether a corporation not found to be present in the forum state could be deemed to have had contacts with the state through the activities of a predecessor corporation. When a corporation ceases to exist, the question often arises whether a successor to the defunct corporation may be held liable for causes of action arising out of the predecessor corporation's activities. This question assumes a jurisdictional form when courts are called on to decide whether personal jurisdiction over a successor corporation can be founded on the activities of its predecessor where the successor corporation is not otherwise subject to jurisdiction. The general rule in such cases is that the successor-in-interest may be subject to jurisdiction based on the activities of its predecessor, but only under certain conditions not at issue in the instant case. *See Schenin v. Micro Copper Corp.,* 272 F.Supp. 523, 526 (S.D.N.Y.1967) (Herlands, J.); *Fehl v. S.W. C. Corp.,* 433 F.Supp. 939, 947 (D.Del. 1977).

The Bank argues that because "[c]ourts have used the predecessor as the measuring stick where the successor was not otherwise subject to jurisdiction," the court should "infer that jurisdiction over the predecessor is a prerequisite to jurisdiction over the successor even where the successor is otherwise subject to jurisdiction." Defendant's Supplemental Memorandum of Law in Support of Motion to Dismiss at 4.

In an earlier brief, the Bank goes farther and argues that this inference is required by the "minimum contacts standard" of *International Shoe Company v. Washing-ton,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and that "no amount of contacts between the Bank of Baltimore and the State of New York can confer jurisdiction on the Court in this case." Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint at 3 n. 2.

■ This argument confuses two separate standards for finding jurisdiction over foreign defendants, one that applies when the defendant's contacts with New York are merely casual or intermittent, and one that applies when the contacts are systematic and continuous. The difference is explained in *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981). If the defendant's contacts with New York are merely casual or intermittent, personal jurisdiction may be asserted under the state's long arm statute, NYCPLR § 302 (McKinney 1972 & Supp. 1989) ("§ 302"), but only if the cause of action arises out of those contacts. In contrast, if a foreign defendant has engaged in a systematic and continuous course of doing business in New York, there is no need to invoke the state's long arm statute. The court may instead rely on its traditional jurisdictional authority over persons found "present" within the state. This authority has been preserved by NYCPLR § 301 ("§ 301"), and when properly invoked over a foreign defendant, "there is no need to establish a connection between the cause of action at issue and the foreign defendant's business activities within the State." *McGowan* 437 N.Y.S.2d at 645, 419 N.E.2d at 323. *See also Longines–Wittnauer Co. v. Barnes & Reinecke,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 13–14, 209 N.E.2d 68, 71–72 (1965) (describing the origins and purpose of § 302); *Laufer v. Ostrow,* 55 N.Y.2d 305, 309–10, 449 N.Y. S.2d 456, 458, 434 N.E.2d 692, 694 (1982) (defining the "doing business" standard applicable under § 301); *Bialek v. Racal–Milgo, Inc.,* 545 F.Supp. 25, 31, 33 (S.D.N.Y. 1982) (Ward, J.); and *Diskin v. Starck,* 538 F.Supp. 877, 879–80 (E.D.N.Y.1982) (comparing the jurisdictional reach of §§ 301

and 302).[1]

■ If the Bank satisfies the "doing business" test of § 301, it is not necessary for Colson to show that its cause of action arose from any contact which the Bank had with New York. "Once the foreign defendant is found to be doing business here, it is present and subject to *in personam* jurisdiction for all purposes, for 'jurisdiction does not fail because the cause of action has no relation in its origin to the business [here] transacted.'" *Top Form Mills v. Sociedad Nationale Ind., Etc.*, 428 F.Supp. 1237, 1242 (S.D.N.Y.1977) (Gagliardi, J.), *quoting Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917). There is no reason why an exception to this rule should be recognized when the cause of action arises out of the activities of a predecessor in interest to the defendant. At least, the Bank offers none.

Thus, there are two ways in which Colson can show that the court has personal jurisdiction over the Bank in this case. Colson can show either that the Bank satisfies the doing business test of § 301, or that the court would have had jurisdiction over Metropolitan for purposes of adjudicating this dispute.[2]

■ Colson argues that the court would have had long-arm jurisdiction over Metropolitan, because Metropolitan transacted business in New York in connection with the subject matter of this suit both in its own right and through an agent. *See* § 302(a)(1).

To assess this claim, the court must examine Metropolitan's contacts with New York, resolving factual disputes in Colson's favor. So construed, the relevant facts are as follows. The CD was issued by County Savings Bank of Santa Barbara, California ("County"). Metropolitan's participation in the CD was solicited by FAIC Securities, Inc. ("FAIC"). Metropolitan effected purchase of its participation in the CD by wiring funds to County's collection and paying agent in New York. A depository receipt evidencing Metropolitan's interest was sent from New York to Metropolitan. Monthly interest payments were wired to Metropolitan from New York, as were the alleged double payments of principal and interest when the CD matured.

These contacts are insufficient to establish long-arm jurisdiction. The only case cited by Colson, *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y. S.2d 337, 256 N.E.2d 506 (1970), is inapposite. The defendant in *Parke–Bernet*, a California resident, participated in an auction in New York by means of an open telephone line over which he received and transmitted bids. The court concluded that "the defendant, in a very real sense, projected himself into the auction room in order to compete with the other prospective purchasers who were there." *Id.* at 18, 308 N.Y.S.2d 337, 256 N.E.2d 506.

The same cannot be said of Metropolitan. In response to a broker's solicitation, Metropolitan agreed to buy a participation in a certificate of deposit from a California bank. The California bank's collection and paying agent, Colson's predecessor in interest, happened to be located in New York, and Metropolitan was therefore instructed to send the purchase price for the CD to New York. The wiring of that payment was the sum total of Metropolitan's purposeful activities directed to New York. Much more than that is needed to establish

---

**1.** There is no constitutional impediment to this two-track approach to jurisdictional questions. The United States Supreme Court has indicated that states may assert personal jurisdiction over foreign defendants based on either the defendant's "general" or "specific" contacts with the state. The state asserts its "specific jurisdiction" over a foreign defendant when it adjudicates a dispute which arises out of the defendant's contacts with the state. The state exercises its "general jurisdiction" when it adjudicates a dispute which does not arise out of the defendants contacts with the forum, but where the defendant has maintained sufficient general contact with the state that due process is not offended by the exercise of jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

**2.** The Bank does not contest that the court has personal jurisdiction over it for the purpose of adjudicating this dispute if the court would have had personal jurisdiction over Metropolitan for the same purpose.

long-arm jurisdiction based on § 302(a)(1). *See First City Savings Bank v. Keener*, 685 F.Supp. 58 (S.D.N.Y.1988) (Sweet, J.); *First City National Bank and Trust Co. v. Zuckerman*, 682 F.Supp. 182 (S.D.N.Y. 1987) (Doronco, J.).

Colson also tries to establish long-arm jurisdiction by arguing that FSMI, Colson's predecessor in interest and an affiliate of County's New York collection and paying agent, was acting as Metropolitan's agent in servicing the CD. This argument lacks merit. FSMI acted as County's and/or FAIC's agent, not Metropolitan's. Moreover, "[w]hen personal jurisdiction is asserted under § 302 by an agent against its principal, the former cannot, for jurisdictional purposes, attribute its activities in New York to the latter." *New World Capital v. Poole Truck Line, Inc.*, 612 F.Supp. 166, 172 (S.D.N.Y.1985) (Goettel, J.).

■ addition to its § 302(a)(1) claim, Colson argues that the court would have had personal jurisdiction over Metropolitan based on the more stringent "doing business" standard of § 301. In support of this claim, Colson cites the Bank's admission that Metropolitan maintained bank accounts in New York "to facilitate banking transactions, and for safekeeping of securities," Aff. of Hugh Collins ¶ 23, and additionally alleges that Metropolitan had a total of seven investments which were serviced by FSMI in New York between 1984 and 1987.

Since Colson does not allege that the other Metropolitan investments serviced by FSMI involved contacts with New York any more extensive than those discussed above, they obviously provide insufficient support for a § 301 jurisdictional claim.

With regard to Metropolitan's bank account's in New York, the Bank has submitted affidavit testimony that Metropolitan's banking transactions in New York were limited to the maintenance of custodial accounts in which securities purchased for Metropolitan by the Federal Home Loan Bank System and the Central Fidelity Bank of Lynchburg, Virginia were deposited for safekeeping. According to this testimony, Metropolitan had no role in choosing the location of the banks in which these securities were held. Based on this testimony, it cannot be said that Metropolitan "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith*, 52 N.Y. 2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964)).

■ Colson has requested discovery regarding Metropolitan's bank accounts in New York but offers nothing but speculation as a counterweight to the Bank's affidavit testimony. Discovery cannot be ordered on this basis. *Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533, 1536 (S.D. N.Y.1983) (Duffy, J.); *Grove Valve & Regulator v. Iranian Oil Services*, 87 F.R.D. 93, 96 n. 8 (S.D.N.Y.1980) (Weinfeld, J.).

■ As explained above, the fact that the court would not have had personal jurisdiction over Metropolitan is not necessarily fatal to Colson's claim. If the Bank satisfies the "doing business" test of § 301, the court has personal jurisdiction over it for all causes of action.

Colson admits that it has no knowledge of the Bank's business dealings in New York but requests discovery on the issue. The only facts alleged by Colson in support of its request is that *Polk's Bank Directory* lists the Bank as having a correspondent bank relationship with Manufacturers Hanover Trust Company of New York.

The Bank has submitted affidavit testimony to the effect that the Bank does not ship merchandise either directly or indirectly into or through New York, is not registered to do business in New York, does not maintain any office or other place of business in New York, has no employees or agents in New York, neither owns nor uses real property in New York, makes no loans in New York, neither advertises nor solicits customers in New York, maintains neither a telephone or mailing address in New York, and maintains bank and securities accounts in the state solely to facilitate

banking and securities transactions for the Bank.

Colson has failed to make even a threshold showing that discovery is likely to uncover a basis for jurisdiction. The Bank's correspondent bank relationship, without more, does not satisfy the "doing business" test, *Nemetsky v. Banque De Developpement,* 48 N.Y.2d 962, 425 N.Y.S.2d 277, 401 N.E.2d 388 (1979), and Colson cites no facts whatsoever challenging the Bank's affidavit evidence. Under these circumstances, no discovery is warranted. *Leema Enterprises, Inc. v. Willi, supra; Grove Valve & Regulator v. Iranian Oil Services, supra.*

*Conclusion*

Defendant's motion to dismiss this action on the ground that the court lacks personal jurisdiction over it is granted.

IT IS SO ORDERED.