**Sandy LINZER and Denny Randell, Plaintiffs,**

v.

**EMI BLACKWOOD MUSIC, INC., EMI Music Publishing, Screen Gems–EMI Music, Inc., Seasons Four Music Corp., Frankie Valli, Robert Gaudio and Peter Bennett, Defendants.**

No. 94 Civ. 1318 (RWS).

United States District Court, S.D. New York.

Nov. 14, 1995.

Dennis H. Cavanaugh, New York, NY, for Plaintiff Sandy Linzer.

Steven E. Kurtz, New York City, for Plaintiff Denny Randell.

Paul, Hastings, Janofsky & Walker, New York City (Sandra A. Crawshaw, of counsel), for Defendants EMI Blackwood Music, Inc., EMI Music Publishing and Screen Gems–EMI Music, Inc.

Richard H. Floum, Los Angeles, CA, for Defendant Seasons Four Music Corp., Frankie Valli, Robert Gaudio and Peter Bennett.

## OPINION

SWEET, District Judge.

Plaintiffs Sandy Linzer and Denny Randell brought this action against Defendants EMI Blackwood Music, Inc., EMI Music Publishing, Screen Gems–EMI Music, Inc. (collectively "EMI"), Seasons Four Music Corp. ("Seasons Four"), Frankie Valli ("Valli"), Robert Gaudio ("Gaudio"), and Peter Bennett ("Bennett") (collectively "Defendants") for various copyright, trademark, tort, and contract claims. Seasons Four, Valli, Gaudio, and Bennett (collectively "Moving Defendants") have moved to dismiss the action insofar as it concerns them, under Fed. R.Civ.P. 12(b)(2) for lack of *in personam* jurisdiction; to dismiss under Rule 12(b)(3) for lack of venue; or to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) (1988). For the reasons set forth below, the motion is granted in part and denied in part. This Court lacks jurisdiction over Seasons Four but possesses jurisdiction over Valli, Gaudio, and Bennett. As to the claims that remain—those against Valli, Gaudio, Bennett, and EMI—venue properly lies in this District.

### The Parties

Linzer, a natural person residing in New Jersey, and Randell a natural person residing in California, are composers of popular songs.

The Four Seasons (the "Group") is a popular singing group, of which defendants Valli and Gaudio were members. Seasons Four, a corporation which came into being in 1965, and which is variously alleged to have been incorporated under the laws of California and those of New York, was the corporate form organized to handle the business dealings of the Group. Seasons Four and the Group had offices in New York through 1966, and perhaps later. Seasons Four was dissolved in 1979, at which time its assets were transferred in their entirety to the Four Seasons Partnership (the "Partnership"). Valli, a natural person residing in California, and Gaudio, a natural person residing in Tennessee, were the principals of Seasons Four and are now the general partners of the Partnership.

EMI Blackwood Music, Inc. is a Connecticut corporation with its principal place of business in New York. EMI Music Publishing, EMI Entertainment World, Inc., and Thorn EMI, Inc. are publishers of music. EMI Music Publishing is a New York entity. Screen Gems–EMI Music, Inc. is a Delaware Corporation with its principal place of business in New York and also is in the business of publishing music.

Bennett, a natural person residing in California, has been the general counsel for Valli and Gaudio and their companies since 1969. Bennett owns Legibus Records, a record company, together with Valli and Gaudio.

### Relevant Third Parties

Saturday Music, Inc. ("Saturday") is variously alleged to be a California corporation and New York corporation. Its president and owner is Robert Crewe, a natural person. Daniel Crewe, Robert Crewe's brother, is a natural person residing in New England. At some point in the past, and perhaps continuing into the present, Daniel Crewe owned part of Saturday. Robert and Daniel are referred to collectively here as "the Crewes".

Windswept Pacific Music Publishing Co. ("Windswept") is a California entity.

Broadcast Music, Inc. ("BMI") is a New York entity. Linzer and Randell are members of BMI, which administers their interests in the Songs. The Harry Fox Agency ("Fox") conducts a business similar to BMI. Randell is a member of Fox, which administers his interest in the Songs. BMI and Fox collect and remit to publishers, after deducting fees, the publisher's share from air play and record sales throughout the world.

### Prior Proceedings

Plaintiffs filed their initial complaint in this action on February 28, 1994. Their Amended Complaint was submitted on April 12, 1994. On July 13, 1995, Moving Defendants filed their notice of motion and papers supporting the present motion, which was heard and considered finally submitted on August 2, 1995.

In the present action, Plaintiffs seek a declaratory judgment regarding copyright ownership, as well as injunctive relief and damages for Defendants' alleged acts of copyright infringement, unfair competition, breach of fiduciary duty and tortious interference with contract. The other claims in this action derive similarly from the dispute over ownership of rights in the songs.

This action is far from the first time that the parties have made use of the courts to settle their disputes. Indeed, since 1966, six actions have been heard in New York state courts regarding the Songs, their copyrights, and the proceeds generated. In 1966, Saturday sued Randell and Linzer in the Supreme Court of the State of New York for breach of their contracts with Saturday, and Linzer and Randell counterclaimed. The parties settled for a release of claims by Linzer and Randell and a cash payment by Saturday.

In 1972, Randell sued Saturday and Seasons Four for breach of contract, seeking unpaid royalties. This suit also was settled, again for a release and payment. In 1977, Saturday assigned to EMI its fifty-percent copyright ownership in at least five of the six songs identified in this action, in settlement of a lawsuit between those two parties. In 1978, Linzer and Randell sued Saturday,

EMI, Seasons Four, and Jobette Music Co., Inc. in New York State Supreme Court. That suit was ultimately dismissed in part by a stipulation discontinuing the action and resolved in part with a judgment against Linzer.

### Facts

The facts except as noted below are derived from the Amended Complaint. In 1964, Linzer and Randell each agreed, after negotiations held in New York City with the Crewes, to render exclusive services as a songwriter for Saturday, which at that time was co-owned by the Crewes. Saturday in turn agreed to promote the songs written by Linzer and Randell (the "Songwriters Agreement"). Linzer and Randell assigned the publishing rights to certain songs to Saturday. Saturday had previously entered into an agreement with the Group. Under that agreement, any song owned or controlled by Saturday and recorded by the Group was to become the joint property of Saturday and Seasons Four. Certain of the songs written by Linzer and Randell were recorded by the Group in New York. Between 1964 and 1966, numerous business meetings were held as well at the premises of Saturday and Seasons in New York. At no time did either Linzer or Randell enter into any agreement with Seasons Four or the Group with respect to the rights in any songs written by Linzer or Randell and recorded by the Group.

In 1977, Saturday assigned its shares of ownership and copyrights in the songs described above ("the Songs") to EMI. To the extent that Plaintiffs retained renewal rights in the Songs (an issue in this action), they never assigned those rights to either Saturday or Seasons Four. The initial term of the copyright in most of the Songs expired on December 31, 1993. In August of that year, Plaintiffs notified EMI, Seasons Four, BMI, Fox, and others of Plaintiffs' claims to rights in the Songs. Later that year, Plaintiffs filed applications with the Register of Copyrights to renew the copyrights in the Songs.

Based on their interpretation of the original agreement and a paragraph in the Songwriter's Agreement for each of the individual songs, the Defendants have continued to license the Songs for recording and live performance and have profited from those licenses.

### The Motion to Dismiss for Lack of Jurisdiction is Granted as to Seasons Four and Denied as to Valli, Gaudio, and Bennett

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a district court must construe the facts from the pleadings and affidavits in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Implicit is the understanding that a plaintiff bears the burden of establishing jurisdiction over a defendant; however, until "a full evidentiary hearing or a trial on the merits is held, [a plaintiff] need only set forth prima facie evidence of personal jurisdiction." *Beacon Enters. Inc., v. Menzies*, 715 F.2d 757, 768 (2d Cir.1983). Thereafter, a plaintiff must establish jurisdiction by a preponderance of the evidence. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). From the pleadings and affidavits which the Court now has before it, Linzer and Randell have met their initial burden of making out a *prima facie* case for *in personam* jurisdiction over Valli, Gaudio, and Bennett, but not over Seasons Four.

A federal court in a diversity action must look to the forum state's general jurisdictional or long-arm statute to determine whether *in personam* jurisdiction exists over a nonresident defendant. *See Savin v. Ranier*, 898 F.2d 304 (2d Cir.1990) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–25 (2d Cir.1963 (en banc))). In the present action, Plaintiffs allege that all of the Defendants are subject to jurisdiction under § 302(a) of the Civil Practice Law and Rules (CPLR), widely known as New York's "long-arm" statute. That statute provides, in relevant part:

[A] court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state ...; or

3. commits a tortious act without the state causing injury to person or property within the state ... if he

(i) regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumer or services rendered, in the state or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ...

■ Personal jurisdiction under New York's long-arm statute further requires not only that the defendant transact business in the state but that the cause of action arise from the in-state transactions. *Davis v. Costa–Gavras,* 595 F.Supp. 982 (S.D.N.Y.1984).

The Amended Complaint contains thirteen causes of action, which can be separated into three categories:

1) Contract claims against EMI only, arising from EMI's receipt of rights and title to five of the Songs in settlement of its suit against Saturday and its concurrent assumption of obligations under the original songwriter/publisher contracts between Saturday and plaintiffs Linzer and Randell. Those claims are for breach of contract (Count V), tortious breach of the covenant of good faith and fair dealing (Count VI), breach of fiduciary duty (Count VII), and an accounting (Count X) (collectively, the "Contract Claims").

2) Claims arising from Plaintiffs' assertion of copyright renewal rights in the Songs, brought against both EMI and Moving Defendants. Those claims are for declaratory relief (Count I), copyright infringement (Count II), unfair competition (Count III), and tortious interference with contractual relations (Count IV) (collectively, the "Renewal Rights Claims").

3) Claims brought only against Moving Defendants in connection with their continued licensing of the Songs and enrichment therefrom. Those claims are for breach of fiduciary duty (Count VIII), constructive trust (Count IX), an accounting (Count XI), conversion (Count XII), and unjust enrichment (Count XIII) (collectively, the "Licensing Claims").

### *The Motion to Dismiss for Lack of Jurisdiction Will Be Granted as to Seasons Four*

■ As a threshold matter, the question of jurisdiction in this matter is complicated by the parties' conflicting allegations regarding the existence or non-existence of Seasons Four. The Amended Complaint alleges that Seasons Four is a California corporation that is still in existence. Bennett, however, alleges in his affidavit that the corporation was "de facto dissolved" prior to 1978. In support of that allegation, Moving Defendants have submitted two documents. Appended to Bennett's declaration is a certificate of acknowledgement signed by Gaudio, transferring all of the assets of Seasons Four to the Partnership. Moreover, Moving Defendants have submitted a certificate of dissolution from the New York Secretary of State, indicating that Seasons Four was a New York corporation and was dissolved in 1979. Plaintiffs in their brief appear to concede the dissolution of Seasons Four in the context of arguing that the Partnership constitutes a successor-in-interest to Seasons Four. Even construing the facts from the pleadings and affidavits in the light most favorable to the plaintiff, *Hoffritz,* 763 F.2d at 57, we must conclude that Seasons Four no longer exists. This conclusion does arise from material outside the pleadings. However, it is well-settled that extraneous matter may be used in conjunction with defenses raised under Rule 12(b). *See Central Mexico Light & Power Co. v. Munch,* 116 F.2d 85 (2d Cir.1940). 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 1364, at 468–69 (1990). Unlike motions made under Rule 12(b)(6), which must be converted by a court into a motion for summary judgment before extraneous material may be considered, other Rule 12(b) motions need not be converted for a court to look beyond the pleadings. *See, e.g., Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

The fact that a corporation has ceased to exist does not necessarily mean that the corporation cannot be sued. New York law provides that "[a dissolved] corporation may sue or be sued in all courts and participate in actions and proceedings ... and process may be served by or upon it." New York Business Corporation Law § 1006(a)(4) (McKinney 1986). Further, "The dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers, or shareholders for any right or claim existing or any liability *incurred before such dissolution*," with certain inapposite exceptions. *Id.* at § 1006(b) (emphasis added); *see Flute v. Rubel*, 682 F.Supp. 184, 187 (S.D.N.Y.1988) (Sweet, J.) (citing *Rodgers v. Logan*, 121 A.D.2d 250, 503 N.Y.S.2d 36 (1st Dep't 1986) (citing cases)); *Independent Investor Protective League v. Time, Inc.*, 50 N.Y.2d 259, 428 N.Y.S.2d 671, 406 N.E.2d 486 (1980). Indeed, a dissolved corporation can be served.

Yet despite the fact that a dissolved corporation could be subject to this Court's jurisdiction, Seasons Four is not so in this action. The allegations of Plaintiffs with regard to Seasons Four involved actions taken subsequent to its dissolution. As a result, although certain underlying acts may have been taken by the corporation—specifically, the contract entered into by Seasons Four—the allegations here involve actions taken after the expiration of the first term in 1993. Thus, Seasons Four cannot be reached under the long-arm statute.

For these reasons, the motion will be granted with respect to Seasons Four.

### The Motion to Dismiss for Lack of Jurisdiction Will Be Denied as to Valli and Gaudio

Plaintiffs' Amended Complaint does not make clear whether its allegations against Valli and Gaudio are in their capacity as individuals, as general partners of the Partnership, or as individual successors-in-interest to Seasons Four. Assuming for the moment that Valli and Gaudio do possess sufficient contacts with New York, they are subject to the long-arm statute only if those contacts are related to activities that gave rise to the claims asserted in this action.

Most of those activities are alleged as to Seasons Four, and therefore Valli and Gaudio are liable only if they are successors-in-interest to Seasons Four. *See Viacom Int'l v. Melvin Simon Prods.*, 774 F.Supp. 858, 864 (S.D.N.Y.1991) (Sweet, J.); *Colson Servs. Corp. v. Bank of Baltimore*, 712 F.Supp. 28 (S.D.N.Y.1989). "A successor-in-interest may be subject to jurisdiction based on the activities of its predecessor, but only under certain conditions." *Colson*, 712 F.Supp. at 30 (citing *Schenin v. Micro Copper Corp.*, 272 F.Supp. 523 (S.D.N.Y.1967), *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939 (D.Del.1977)). Those conditions are that the predecessor and successor be one and the same and that the predecessor continue to exist as part of the successor. *See Schenin*, 272 F.Supp. at 526, *Fehl*, 433 F.Supp. at 948. The transfer between Seasons Four and the Partnership conforms with these conditions, and they can be considered to be successors-in-interest to Seasons Four.

Even excluding the alleged actions of Seasons Four when it was a viable entity, Valli and Gaudio do have sufficient contacts with New York to present this Court with jurisdiction, and the allegations contained in Plaintiffs' Renewal Rights Claims and Licensing Claims are sufficient to bring Valli and Gaudio within the ambit of New York's long-arm statute. Plaintiffs allege, *inter alia*, that Valli and Gaudio have licensed the Songs through BMI and Fox, which conduct their activities, including passing on royalties to Valli and Gaudio, in New York. In so doing, Valli and Gaudio have contracted to sell goods or services in New York. Such licensing arrangements have previously been held by this Court to constitute sale of goods or services and to give the Court jurisdiction over foreign entities under the New York long-arm statute. Thus, in *Greenky v. Irving Music, Inc.*, 217 U.S.P.Q. 750 (S.D.N.Y. 1981) (Goettel, J.), the court held a licensing agreement between a foreign entity and BMI "sufficient to establish personal jurisdiction against [the party] under the New York long-arm statute." *Id.* at 751. Similarly, in *Meyer v. Sharron*, No. 86 Civ. 9291, 1986 WL 8311 (S.D.N.Y. July 24, 1986) (Griesa, J.), the court, citing *Greenky*, held that out-of-state

defendants which had assigned their public performance rights in a song to a licensing clearinghouse, which in turn had licensed the songs to New York entities, had "contracted to supply goods or services in the state." *Id.* at *1. Finally, the court in *Lipton v. The Nature Co.*, 781 F.Supp. 1032 (S.D.N.Y.1992) (Owen, J.), citing *Meyer* and *Greenky,* held on similar facts that foreign parties fell under the long-arm statute.

According to the Moving Defendants, *Greenky* and its progeny are inapposite on the grounds that licensees are not agents of licensors. *Greenky* did indeed suggest that this is the case; *Lipton* suggested that it is not. However, *Greenky's* holding did not rest on agency principles: it held that by soliciting the services of New York licensing agents for the licensing and promotion of the Songs in this state and throughout the nation, a party contracts to sell its goods or services here and thus exposes itself to the jurisdiction of New York courts.

Moving Defendants fault *Greenky* further for its reliance on *Testa v. Janssen,* 482 F.Supp. 1195 (W.D.Pa.1980). *Testa,* however, was cited in *Greenky* only as support for its argument, not as precedent.

Plaintiffs also allege that several of the tortious acts on which their claims are based occurred at least in part in New York. Valli and Gaudio should reasonably have expected these acts, if indeed they occurred, to bear consequences in New York, and they derive substantial revenue from interstate commerce, thus bringing them within the ambit of New York's long-arm statute. Chief among the torts alleged to have borne an impact in New York is that of copyright infringement. As the court noted in *Lipton:*

> Copyright infringement is a commercial tort that is "deemed to take place at the point of consumer purchase." *Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452, 1456 (S.D.N.Y.1987). Even if a non-domiciliary defendant commits infringement through sales by independent brokers or retail merchants in New York, this constitutes tortious conduct within New York and subjects the defendant to jurisdiction under CPLR Section 302. *Heritage House Frame and*

> *Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.,* 88 F.R.D. 172, 173 (E.D.N.Y.1980).

*Lipton,* 781 F.Supp. at 1036. Other torts alleged by Plaintiffs that may have had an impact in New York include trademark violations, tortious interference with contractual and advantageous business relationships, breach of fiduciary duties, conversion, and unjust enrichment.

Moving Defendants object that the activities alleged are not substantially related to the claims asserted. They note properly that there must be an "articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 644, 419 N.E.2d 321, 322 (1981). Plaintiffs have adequately alleged, however, such a nexus between the licensing activities and agreements of the various parties and the current dispute over renewal rights. In *Viacom International, Inc. v. Melvin Simon Prods., Inc.,* 774 F.Supp. 858 (S.D.N.Y.1991) (Sweet, J.), it was held that there was no jurisdiction over a defendant which had received an assignment of rights in a movie, where the defendant had not performed any act in New York in relation to those acquired rights, and that the mere receipt of an assignment of rights from a company which conducts business in a forum state is insufficient to support jurisdiction in that state under the minimal contacts standard of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Id.* at 862. However, the Partnership's conduct here exceeds that of the defendant in *Viacom.* The Partnership not only has inherited interests, but also has taken continued actions to promote those interests and to receive profit from them—the licensing activities most notably—creating a clear New York nexus. Defendants have used New York music licensing agencies, through which they are able to license and promote the Songs both in this state and throughout the nation, receiving profits and royalties from them.

In sum, as to Valli and Gaudio, CPLR § 302(a)(1) has been satisfied: Valli and Gaudio transacted business in the state, and the cause of action arose from the in-state trans-

actions. Furthermore, the allegations of wrongful and tortious interference with contractual relations present the Court with jurisdiction under CPLR § 302(a)(2), since Seasons Four's retainer of a New York licensing agent could constitute tortious interference committed in this state with Plaintiffs' business contracts in this and other states.

The motion is denied as to Valli and Gaudio.

### The Motion to Dismiss for Lack of Jurisdiction is Denied as to Bennett

■ This Court possesses jurisdiction over Bennett, for his actions bring him under New York's long-arm statute, and they have a sufficient nexus with the activities giving rise to the claims in this action. Bennett is a California resident. He alleges that his role has been limited to that of counsel to Valli and Gaudio and their businesses. Bennett asserts that he has not engaged in business activity or tortious activity that would subject him to long-arm jurisdiction in New York. These protests are unavailing interpreting the facts in the light most favorable to Plaintiffs.

Bennett co-owns, with Valli and Gaudio, Legibus Records. Bennett describes Legibus Records as "a fictitious business name of mine." Legibus Records serves as a vehicle through which the Partnership entered into a license with Collectibles Records/Gotham Distributors ("Collectibles") for the manufacture and sale of single records of compositions by Valli and the Group. The agreement between Collectibles and Legibus Records has been extended or renewed in the past and is still in existence. Randell alleges, and Bennett does not deny directly, that Legibus Records is also engaged in licensing activity with Fox in New York.

Plaintiffs allege that certain of these activities have concerned the Songs at issue, thus providing a nexus with the activities giving rise to the claims against Bennett. Bennett alleges that at all times, monies received from Collectibles has been treated and maintained by Bennett as client trust funds and that he ultimately derives no profit from his involvement in Legibus. However, by Bennett's own admission, he is a co-owner of Legibus Music and has derived a ten-percent commission from those same funds. Unlike his involvement with Seasons and the Partnership, then, which may well have been or be one only of counsel, Bennett, as co-owner of Legibus Records, has engaged in activities that constitute the sale of goods and services in New York and subject him to jurisdiction in New York.

Plaintiffs allege further that Bennett knowingly provided false information and documents to BMI in New York, thus helping to bolster Seasons' claim to the renewal copyrights to the Songs. This constitutes an allegation of tortious activity in New York and constitutes another reason that Bennett falls under the ambit of the long-arm statute.

The motion to dismiss for lack of jurisdiction is denied as to Bennett.

### The Motion to Dismiss for Lack of Venue is Denied

■ Defendants have moved under Rule 12(b)(3) for dismissal for lack of venue in this judicial district. The special venue statute for copyright actions, 28 U.S.C. § 1400(a), provides that such actions may be brought "in the district in which the defendant or his agent resides or may be found." A defendant "may be found" wherever that person is amenable to personal jurisdiction. *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F.Supp. 1452, 1456 (S.D.N.Y.1987). Thus, for the reasons discussed above in the context of the motion to dismiss for lack of personal jurisdiction, the motion to dismiss for lack of venue is denied.

### The Motion to Transfer Venue is Denied

Defendants have moved further under Rule 12(b)(3) for an order under 28 U.S.C. § 1404(a) finding that venue of the action, insofar as claims are asserted against the Moving Defendants, should be transferred to the United States District Court for the Central District of California, on the grounds that the transfer is required for the convenience of the parties and is in the interests of justice.

■ 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." Factors which determine whether a case should be transferred under § 1404 are: (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with governing law; and (8) trial efficiency and the interests of justice. *Viacom Int'l v. Melvin Simon Prods.*, 774 F.Supp. 858, 867–68 (S.D.N.Y.1991); *Don King Prods., Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y.1990); *see also Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y. 1967); *Richardson Greenshields Secs., Inc. v. Metz*, 566 F.Supp. 131, 134 (S.D.N.Y.1983). Moving Defendants have based their motion on the second and eighth of these factors: convenience of the parties and the interests of justice.

██ "[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness." *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988)). The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y.1995); *see Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989).

██ The defendant moving for a transfer must, therefore, demonstrate "that transfer is in the best interests of the litigation." *Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F.Supp. 81, 95 (S.D.N.Y.1995); *see also Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.*, 442 F.Supp. 1201, 1207 (S.D.N.Y.1978); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978),

*cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

██ Moving Defendants fall short of meeting this burden. They argue that the parties will be substantially inconvenienced by a venue in this District. They point to their anticipated addition of third parties—Saturday, Crewe, and Windswept. On balance, this argument fails to persuade. Saturday is a New York corporation active and in good standing. Crewe is one of Saturday's principal officers and subject to the long-arm jurisdiction of New York. Windswept is a large publishing company with regular and substantial business contracts with New York. In any event, Moving Defendants have failed to demonstrate that the joinder of these parties is required.

Moving Defendants argue further that Bennett's and Valli's residences in California add to the inconvenience. Yet Gaudio resides in Tennessee, which is closer to this District than to the Central District of California. Valli's affidavit indicates that he travels frequently to New York, and it is difficult to believe that travel here for the purposes of this action would pose an undue hardship. EMI, which opposes this motion, is located in New York. Daniel Crewe is alleged to be in New England. Several other non-party witnesses are located in New York, and many may not be subject to the jurisdiction of the District Court in the Central District of California.

The operative facts central to Plaintiffs' claims in this case occurred largely in New York. The negotiation, execution, and performance of relevant contracts occurred in New York, as did the prior litigations involving the rights in issue in the action. There is, therefore, a material connection between Plaintiffs' contract-related and copyright renewal-related claims on the one hand and the New York forum on the other. *See Boreal Laser Inc. v. Coherent, Inc.*, 22 U.S.P.Q.2d 1559, 1560, 1992 WL 9375 (S.D.N.Y.1992).

The core evidentiary material respecting the claims against the EMI Defendants, including both the pertinent financial books and records and the critical testimonial witnesses are located in New York. New York, therefore, is the place where there will be

most efficient access to those documents and witnesses—factors that strongly militate in favor of litigating this case in New York. *See Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 260 (S.D.N.Y.1974).

In addition to the convenience to parties and witnesses of venue in New York, the fact that many of the claims may be governed by New York law is a factor tilting the proper choice of venue to New York. It is appropriate for a case to be tried in the forum at home with the governing law, *Ferens v. John Deere Co.*, 494 U.S. 516, 530, 110 S.Ct. 1274, 1283, 108 L.Ed.2d 443 (1990); 15 Wright, Miller & Cooper § 3851 at 415 (1986).

A transfer should not be granted "absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court...." *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.*, 442 F.Supp. 1201, 1207 (S.D.N.Y.1978). Moving Defendants have failed to make such a showing.

### Conclusion

The motion to dismiss for lack of jurisdiction is granted as to Seasons Four and denied as to Valli, Gaudio, and Bennett.

The motion to dismiss for lack of venue is denied.

The motion to transfer venue is denied.

It is so ordered.