**TELEBRANDS CORP., Plaintiff,**

v.

**WILTON INDUSTRIES, INC.
and Rowoco, Defendants.**

**No. 97 CIV. 6250(RPP).**

United States District Court,
S.D. New York.

Nov. 5, 1997.

Cooper & Dunham by Robert D. Katz, Robert T. Maldonado, New York City, for Plaintiff.

Epstein, Becker & Green, P.C., by John J. Rosenberg, Thomas J. Luz, New York City, for Defendants.

### REVISED OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Telebrands Corp. ("Telebrands") moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendants Wilton Industries, Inc. and ROWOCO (collectively "Wilton") move pursuant to 28 U.S.C. § 1404(a) for an order transferring venue from this Court to the Northern District of Illinois.

### Background

Telebrands is a Virginia corporation with offices in Virginia and New Jersey. It is in

the business of marketing and selling consumer products through direct response television advertising and through national retail stores.[1] (Khubani Decl. ¶ 2). In the Spring of 1996, Telebrands became, the exclusive licensee in the United States of a patent for a new kind of hand-held can opener, which Telebrands sells under the mark "SAFETY CAN." While most hand-held can openers cut through the top of the can, leaving a jagged edge on the lid after opening, SAFETY CAN employs a new technology that cuts sideways through the rim of the can and leaves both the lid and the can without any sharp or jagged edges. (*Id.* ¶¶ 3–4). Additionally, using SAFETY CAN ensures that the lid of the can will not fall into its contents, eliminating a potential source of contamination. (*Id.*).

On December 2, 1996, after testing its direct response advertising on television, Telebrands began a national television advertising campaign to promote SAFETY CAN as a new, safer hand-held can opener. (*Id.* ¶ 8). Its television commercial was and is shown on television networks, major cable channels and local television stations across the country. As of August 22, 1997, the date this lawsuit was filed, Telebrands had spent approximately $3 million advertising SAFETY CAN. (*Id.*). In addition to television advertising, it also advertises on the Internet, in catalogs, in newspapers, in magazines, in free standing inserts, and in credit card statement "stuffers." (*Id.*). As of the filing of this lawsuit, Telebrands had received over 300,-000 direct response orders from consumers and over 1,900,000 retail orders. (*Id.*). Orders are currently placed through December 1997. (*Id.*). The packaging for SAFETY CAN displays the familiar red "AS SEEN ON T.V." logo. (Vetter Decl., Exs. A–1 to A–5).

Around June 1997, Wilton began selling a competing hand-held can opener, known as the Betty Crocker "Safe Touch™" ("BCST") can opener, that also opens cans without any sharp edges on the can or the lid. The Betty Crocker trademark is licensed by General Mills, Inc. ("General Mills") and is displayed on the packaging for the BCST can opener.

(Khubani Decl., Ex. 1). The packaging also displayed the "AS SEEN ON T.V." logo in the upper right-hand corner. (*Id.*).

Between June 1997 and September 17, 1997, Wilton shipped a total of 63,622 units of its BCST can opener in packaging containing the "AS SEEN ON T.V." logo. (Vetter Decl. ¶ 4). Most of these units (58,292) were shipped to seven major chain store retailers. (*Id.*). Approximately 4,326 units were shipped to General Mills to be distributed through its catalog. (*Id.* ¶ 5). The remaining units were shipped in small quantities to retailers in Canada, to Rowoco for use as product samples, and to Wilton's Housewares. (*Id.* ¶ 6). This action was commenced and this motion was filed on August 22, 1997. Since September 17, 1997, Wilton has not shipped any product bearing the "AS SEEN ON T.V." logo. (Erwin Reply Aff. ¶ 2).

Wilton states that it determined, in April 1997, to run a multi-regional direct response television advertising campaign to promote the BCST can opener. (*Id.*). This campaign was initially scheduled to begin in early July 1997. (Vetter Decl. ¶ 7). However, to accommodate changes to the commercial requested by General Mills, the campaign was delayed. (Erwin Decl. ¶ 4.A). The campaign was then rescheduled for around the end of September 1997. (*Id.*). Until October 15, 1997, no nationwide television advertising of the BCST can opener had occurred, although there had been limited direct response television advertising that appeared on cable preview channels in the Chicago suburbs during June 1997. (*Id.*).

Telebrands complaint alleged that Wilton had not advertised the BCST can opener on television and that Wilton's use of the "AS SEEN ON T.V." logo in marketing its BCST can opener constituted false advertising in violation of both § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and N.Y. Gen. Bus. Law § 350, as well as unfair competition under New York common law. On the same day this lawsuit was filed, Telebrands filed a notice of motion for a preliminary injunction

---

1. Direct response television advertising asks the viewer to place a telephone call to a 1–800 telephone number or to write to a post office box to order the article advertised.

seeking to enjoin Wilton from using the logo "AS SEEN ON T.V.," from accepting orders for the BCST can opener in response to offers to sell the product with packaging displaying that logo, from shipping the BCST can opener in packaging containing that logo, and from advertising, promoting, offering for sale, distributing or selling the BCST can opener until the benefit received by Wilton of its false advertising has dissipated. In addition, Telebrands requests that the Court order Wilton (1) to cancel all outstanding orders for the BCST can opener and refund monies received, (2) to notify all customers that the BCST can opener was not advertised on television and is not related to SAFETY CAN, (3) to issue a recall of all BCST can openers which have been distributed in packaging bearing the false logo, and (4) to send blank stickers to its customers to affix over the "AS SEEN ON T.V." logo for any BCST can opener not returned pursuant to the recall.

On September 17, 1997, defendants submitted their opposition papers to this motion. At the same time, they filed a motion seeking to transfer venue to the Northern District of Illinois, a district they claim is more convenient for their witnesses. While these motions were pending, defendants launched their national television advertising campaign which was scheduled to run 10,000 direct-response spots in 500 markets nationwide between October 15 and October 28, 1997. (Erwin Reply Aff. ¶ 3). Although it is Telebrands's regular business to monitor direct response television commercials and it subscribes to the Jordan Whitney Report listing direct response television advertising (Mullen Aff. ¶¶ 2–3), both Telebrands and the Court learned of the start of Wilton's advertising campaign at the argument for the current motions, held October 28, 1997, at which defendants submitted a so-called "Reply Affidavit," which is, in reality, a surreply affidavit to the motion for preliminary injunction.[2] Wilton continues to maintain that since September 17, 1997 it has shipped no can openers bearing the "AS SEEN ON T.V." logo. Since that date, it has, however, sold a num-

ber of units to Telestar, the marketing concern responsible for its television advertising campaign, which Telestar is attempting to sell using the direct response television advertising campaign described above. These units apparently do not contain the "AS SEEN ON T.V." logo. (Erwin Reply Aff. ¶ 5).

At the argument on October 28, 1997, neither party requested an evidentiary hearing and it does not appear that there is a genuine issue of material fact in dispute. Accordingly, the Court will accept the affidavits of both parties as true for purposes of this motion and decide the motion on the papers.

**Discussion**

In order to receive a preliminary injunction, the plaintiff must show (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions concerning the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in favor of the plaintiff, and (2) that irreparable harm will result unless an injunction issues. *See Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir.1994).

■■■ Telebrands can establish a likelihood of success on the merits. There are two types of false advertising prohibited by § 43(a) of the Lanham Act, advertising that is literally false, and advertising that is true, but in context has a tendency to mislead or deceive the public. *See Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir.1982); *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co.*, 906 F.Supp. 178, 181 (S.D.N.Y.1995), *aff'd* 100 F.3d 943 (2d Cir.1996); *Tripledge Products, Inc. v. Whitney Resources, Ltd.*, 735 F.Supp. 1154, 1163 (E.D.N.Y.1990). If an advertisement is literally false, it may be enjoined without reference to its impact on the consumer. *See McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991); *Coca–Cola*, 690 F.2d at 317; *SmithKline Beecham*, 906 F.Supp. at

---

**2.** Although the Reply Affidavit of Eric Erwin ("Erwin Reply Aff.") makes an assertion to the contrary, there was no attachment to the copy of

the affidavit submitted to the Court showing the stations and times of the airing of such advertising as stated in the affidavit.

181. If the advertisement is implicitly false, it is necessary for the plaintiff to demonstrate that the advertisement is confusing or misleading by reference to public reaction before an injunction will issue. *See Coca-Cola*, 690 F.2d at 317; *SmithKline Beecham*, 906 F.Supp. at 181.

■■■ Here there is no question that the designation "AS SEEN ON T.V." is literally false as applied to the BCST can openers distributed in all areas of the country except for the suburban Chicago area. Wilton admits it had not advertised on television on a national level, at least until October 15, 1997.[3] Its only television advertising occurred on cable preview channels in the suburban Chicago area during the month of June 1997. Thus, since there is no evidence of any handheld can opener other than defendants' BCST can opener that offers the unique safety claims of plaintiff's SAFETY CAN, plaintiff need not demonstrate the impact of the packaging of defendants' product with that logo on the consumer in order to obtain relief in all areas of the country except Chicago.

■■■ A requirement in a Lanham Act case is that the false or misleading statement constitute a "material misrepresentation," in other words, one that would have an impact on a consumer's decision whether to purchase the product. *See Project Strategies Corp. v. National Communications Corp.*, No. CV–94–4925, 1995 WL 669655, at *4 (E.D.N.Y. Oct.27, 1995). In the Second Circuit, a false or misleading statement is a material misrepresentation if it pertains to an "inherent quality or characteristic" of the product. *See Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278 (2d Cir.1981); *Project Strategies*, 1995 WL 669655, at *4.

■■■ The logo "AS SEEN ON T.V." reminds the consumer of advertising she has seen, advertising that highlights the unique virtues of a product, and thus the logo may

influence her to purchase the product in question as the one advertised on television. As seen in this light, it is clear that the false use of the "AS SEEN ON T.V." logo pertains to an "inherent quality or characteristic" of the product—namely, its identity. *See Project Strategies*, 1995 WL 669655, at *4. "AS SEEN ON T.V." identifies the product as the one that the consumer saw advertised, and differentiates it from other products of a similar type.

Based on the above analysis, Telebrands has demonstrated a likelihood of succeeding on the merits of its false advertising claim. It is only necessary to determine whether plaintiff will be irreparably harmed in the absence of an injunction. In cases where the advertisement at issue was one that falsely compared the defendant's product to the plaintiff's product, irreparable harm may be presumed where likelihood of success on the merits is established. *See McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir.1988); *SmithKline Beecham*, 906 F.Supp. at 182; *Playskool, Inc. v. Product Development Group, Inc.*, 699 F.Supp. 1056, 1059 (E.D.N.Y.1988). In such cases, a comparative advertisement harms the competitor whose product is falsely denigrated by influencing the consumer through the use of the false comparison to purchase the defendant's product instead of the plaintiff's. *See McNeilab*, 848 F.2d at 38. This presumption is not warranted, however, in cases where false comparative advertising is not at issue. *See, e.g., id.; Coca-Cola*, 690 F.2d at 316–17.

■■■ Irreparable harm will also result from false advertising if the materiality of the false statement coupled with the unique nature of the product is likely to cause the consumer to buy the falsely advertised product instead of its competitor's product. As discussed above, the use of the designation

---

**3.** It would not be fair to allow the national advertising campaign apparently instituted by the defendants between October 15 and October 28, 1997 to influence the Court's decision on this motion. A defendant should not be allowed to turn a false statement into a true one by actions taken after litigation is pending, especially since defendants were aware of plaintiff's outstanding preliminary injunction requesting in part that

defendants be enjoined from advertising. *Cf. Project Strategies Corp. v. National Communications Corp.*, No. CV–94–4925, 1995 WL 669655, at *5 (E.D.N.Y. Oct.27, 1995) (where defendant had previously never advertised on television, television advertising in violation of temporary restraining order could not serve as grounds for dissolving TRO to allow the use of "AS SEEN ON T.V." logo by defendant).

"AS SEEN ON T.V." is a material false statement in that it is likely to influence a customer's purchasing decision. It is television advertising that actually creates the desire for the product in the mind of the consumer. *See Popeil Brothers, Inc. v. Morris,* 1972 WL 17704, 176 U.S.P.Q. 353, 359 (D.N.J.1972). By falsely employing the logo "AS SEEN ON T.V." on its packaging, defendants have unfairly piggy-backed onto a market created by the plaintiff through an expenditure of over $3 million on advertising.

Defendants' product, the BCST can opener, although not patented, offers the same unique features as plaintiff's SAFETY CAN. It is a hand-held can opener that leaves both the edge of the lid and the edge of the opened can smooth and safe to the touch. Its design prevents the lid of the can from slipping into the can as it is opened. These unique features have been the thrust of the plaintiff's television advertisements. Furthermore, the name "Safe Touch" used by defendants bears some resemblance to SAFETY CAN and reinforces the features emphasized in plaintiff's television advertising. That defendants supply their "Safe Touch" can opener in packaging stressing the same unique features as plaintiff's television advertising, together with the false logo "AS SEEN ON T.V." when there has not been a national television advertising campaign, is more likely than not to influence some consumers' purchasing decisions.[4] A consumer is likely to see the designation "AS SEEN ON T.V." on the product, remember the advertisement of the safe hand-held can opener, notice the similarity of claims made on the packaging, and purchase the product over other options based on this connection. Once purchased, the consumer is unlikely to purchase a second can opener.

Defendants' use of the "AS SEEN ON T.V." red logo is more likely than not to have a significant impact on the sales of plaintiff's product. Telebrands and Wilton are directly competing in the safe hand-held can opener

market. There is no evidence that there are other hand-held can openers that use the word "safe" in their name and claim to open cans leaving no sharp edges on the lid or rim of the can. Ninety percent of Telebrands's sales take place in retail stores. (Khubani Decl. ¶ 10). Thus, the false logo on Wilton's packaging is likely to divert potential sales from one of its only competitors in the safe hand-held can opener industry, Telebrands, causing irreparable injury.

Defendants do not take issue with plaintiff's claim of injury. Rather, defendants contest only the materiality of the false statement made. (Def. Mem. at 8). This argument lacks weight in light of the determination above that the use of the "AS SEEN ON T.V." logo is in fact a material misrepresentation. *See Project Strategies,* 1995 WL 669655, at *4.

■ Because the defendants have had the benefit of three and a half months of false shelf advertising for its product, defendants will be enjoined for a reasonable period of time to dissipate the benefits it has gained from such false advertising. Accordingly, defendants Wilton Industries, Inc., and Rowoco, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby preliminarily enjoined:

(1) from using the "AS SEEN ON T.V." logo, or variations thereof, on packaging and promotional material for its BCST can opener until three weeks after defendants embark upon a national television advertising campaign, which may not begin earlier than four months from the entry of this opinion and order;

(2) from selling or accepting the proceeds from the sale of the BCST can opener in packaging with the logo "AS SEEN ON T.V.," or variations thereof, for four months;

---

**4.** Rather than treating this case as a false advertising case, defendants seek to treat the plaintiff's claim as a false designation of origin claim and emphasize the Betty Crocker trademark to show that there is little likelihood of confusion. Their can opener, however, is called "Safe Touch™

Can Opener" (see back of package at Khubani Decl., Ex. 1) and the designation of Betty Crocker is used as a mark of endorsement as opposed to a designation of origin since the packaging states "[t]ested by the Betty Crocker Kitchens." (Khubani Decl., Ex. 1).

(3) from shipping the BCST can opener in response to sales or offers to sell the BCST can opener in packaging containing the logo "AS SEEN ON T.V.," or variations thereof, for four months; and

(4) from advertising, promoting, offering for sale, or distributing the BCST can opener for four months.

It is further ordered that defendants are required:

(1) to cancel all outstanding orders for the BCST can opener and refund any money received; orders may not be accepted for the BCST can opener for four months;

(2) to recall all BCST can openers in packaging with the "AS SEEN ON T.V." logo, or variations thereof except for those units located in the suburban Chicago area; and

(3) to include in the recall notice a statement that the BCST can opener was not advertised on television and is not connected in any way to plaintiff's SAFETY CAN, which is advertised on television.

■ Defendants have moved for an order pursuant to 28 U.S.C. § 1404(a) transferring the action from this Court to the Northern District of Illinois. The motion is denied.

Title 28, United States Code, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1993). The parties do not dispute that the Southern District of New York is a proper forum in which to bring this action. There is also no dispute that the Northern District of Illinois is a forum in which this action could have been brought originally. The only issue is whether the convenience of the parties and witnesses and the interest of justice require a transfer.

■ In deciding this issue, the relevant factors to consider include: (1) the location of the facts giving rise to the action; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the respect accorded to the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; (8) trial efficiency; and (9) the interest of justice. *See Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y. 1995); *Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 692 (S.D.N.Y.1994).

■ It is the burden of the moving party to demonstrate that transfer is warranted. *See Linzer,* 904 F.Supp. at 216; *Dwyer,* 853 F.Supp. at 692. Before disturbing the plaintiff's choice of forum, there must be a clear showing that transfer is in the best interests of the litigation. *See Linzer,* 904 F.Supp. at 216; *Dwyer,* 853 F.Supp. at 692. Defendants cannot make this showing.

Defendants argue that the Northern District of Illinois would be a more convenient forum for themselves and their witnesses. Wilton is located in suburban Chicago. The employees with the most knowledge of Wilton's marketing, sales, and distribution efforts are similarly located in the suburban Chicago area. (Erwin Decl. ¶ 4). Non-party witnesses such as employees of General Mills who can testify concerning the Betty Crocker trademark are located in Minneapolis, Minnesota. (*Id.* ¶ 8). Another non-party witness who helped design the packaging of the BCST can opener is located in Sheboygan, Wisconsin. (*Id.* ¶ 10). Wilton argues it would be more convenient for these non-party witnesses to travel to Chicago than to New York.

■ The convenience of the parties and witnesses is generally the most important factor for a court to consider when deciding whether a change of venue is proper. *See Dwyer,* 853 F.Supp. at 692. However, the costs and burdens should not merely be shifted from one party to the other. *See id.* at 693. Plaintiff argues that its principal witnesses work out of its New Jersey office located very near this District. Its documents are similarly located in New Jersey. In response to the defendants' argument that their non-party witnesses are closer to the Northern District of Illinois than to this District, plaintiff argues it would be equally convenient for the defendants' non-party witnesses to fly to New York and stay in a hotel

as it would be for them to fly to Chicago and stay in a hotel. Alternatively, the testimony of non-party witnesses could be taken by deposition. Transferring the action has not been shown to be demonstrably more convenient for non-party witnesses. Moreover, it would relieve the burden on the defendants' witnesses located in Chicago only at the expense of plaintiff and its witnesses. Where the convenience of the parties and witnesses does not appear to favor one district over the other, plaintiff's choice of forum should not be disturbed. *See Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 67 (S.D.N.Y.1993).

An additional factor weighing against transfer is judicial economy. There have been a number of actions involving SAFETY CAN pending in this Court.[5] Thus, the Court is already familiar with the applicable law and the background of the manner in which products are marketed by direct response television advertising. To require another judge in the Northern District of Illinois to familiarize herself or himself with these issues would be a waste of judicial resources.

Finally, plaintiff has connections to this forum other than the earlier actions it brought here. Plaintiff alleges that acts of unfair competition by defendants occurred within this District and its complaint includes causes of action under New York law.

### Conclusion

Plaintiff's motion for a preliminary injunction is granted as described herein. Plaintiff is required to post a bond as security in the amount of $10,000 by November 5, 1997. Defendants' motion to transfer venue is denied.

IT IS SO ORDERED.

---

5. *See, e.g., Telebrands Corp. v. E. Mishan & Sons,* 97 Civ. 1414(RPP), 1997 WL 232595 (S.D.N.Y. May 7, 1997).