LEEMA ENTERPRISES, INC., and Leon E. Richartz, Plaintiffs,

v.

Hans WILLI and Handelskredit-Bank, A.G., Defendants.

No. 83 Civ. 6434 (KTD).

United States District Court, S.D. New York.

Dec. 21, 1983.

1534

Morgan, Lewis & Bockius, New York City, for plaintiffs; H. Franklin Bloomer, Jr., Thomas R. Stritter, New York City, of counsel.

Reaves & Yates, New York City, for defendant Handelskredit-Bank, A.G.; James A. Reaves and Joan G. Yates, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Leema Enterprises, Inc. ("Leema") and Leon E. Richartz ("Richartz") move to confirm an order of attachment of defendant Handelskredit-Bank, A.G.'s (the "Bank") $500,000 account at Chase Manhattan Bank. The Bank cross-moves for dismissal of the complaint against it, and the vacating of the preliminary order of attachment. In support of its cross-motion the Bank asserts several grounds including failure to state a claim upon which relief may be granted, failure to plead fraud with sufficient particularity, lack of personal jurisdiction, and improper venue. I find that the Bank's motion must be granted on the basis of lack of personal jurisdiction and improper venue.

The following facts may be gleaned from the Complaint, and in those aspects of the affidavits offered to establish jurisdictional facts that are uncontroverted. *See China Union Lines, Ltd. v. American Marine Underwriters, Inc.,* 454 F.Supp. 198, 199 (S.D.N.Y.1978). Leema is a Delaware corporation with its principal place of business in California. It is a holding company which provides computer services to and develops new business ventures for its commodities' and securities' business subsidiaries. Richartz, also a California resident, is the president and principal shareholder of Leema. The Bank is a Swiss bank with its principal place of business in Zurich, Switzerland. Hans Willi ("Willi"), the other defendant in this action, is a Swiss citizen, a United Kingdom resident, president of the Bank, and at least at one time, the Bank's principal shareholder.

Willi and Leema or Richartz have engaged in numerous business transactions since 1976. One of these transactions, which is the subject of this dispute, involved a Leema investment in certain gold mining properties in Costa Rica. Willi first discussed this investment with Richartz in February 1982. In May 1982, Richartz on behalf of Leema, entered into an oral agreement with Willi pursuant to which Leema would, at its option, invest up to $1 million in four $250,000 installments in the Costa Rican mining ventures. Leema would receive a 2.5 percent interest in the Costa Rican companies for each installment payment. Willi allegedly told Richartz that the Bank, in a fiduciary capacity, "would apply funds paid by Leema to the proper company in exchange for newly-issued shares." Complaint ¶ 11. Leema paid the first $250,000 installment on May 13, 1982, payable to "Handels Credit Bank, c/o Hans Willi." The check and the accompanying letter were sent to Willi at his home in the United Kingdom. Richartz stated in the letter that "[e]nclosed is a check for $250,-000 to be applied as per our agreement formed recently in Miami .... I hope we can conclude the written agreement in the near future and am looking forward to meeting you in Memphis next week." Willi initially acknowledged receipt of the first payment by telex to Leema's California office on May 21, 1982. In that telex, Willi stated:

> This is to confirm todays receipt of your cheque in the amount of U.S. dollars 250,000—as per our agreement formed in Miami.
>
> . . . . .
>
> All I can say at this stage is to thank you for your confidence and that I am very happy to have to share my 'little venture.'
>
> . . . . .
>
> With my best personal regards.
> Hans

On June 25, 1982, Willi again acknowledged receipt of the $250,000 investment, and its deposit in Account 1856 at the Bank. Willi signed the telex, however, "Yours Sincerely, Handelskredit Bank Hans Willi, President." This telex also noted that Leema was acquiring an interest in a company with "assets in excess of 2,500,-000 dollars." The latter is the principal misrepresentation alleged in the complaint.

On August 11, 1982, Leema paid the second $250,000 installment by wire transfer to an account maintained by the Bank at the Swiss Bank Corporation in New York. Soon thereafter, by letter dated August 16, 1982 and addressed to Willi's home in England, Richartz on behalf of Leema sent Willi a draft agreement relating to Leema's investment. Neither the letter nor the draft agreement referred to the Bank in any way. The only parties referred to in the agreement are Leema and Willi in his personal capacity. Willi acknowledged receipt of the second installment by telex dated August 26, 1982 from his home in England to Leema in California.

By letter dated September 15, 1982, Willi sent Leema a letter in which he objected to certain terms of the proposed agreement. Included among his objections was Leema's inclusion of certain gold properties owned by the Bank which Willi made clear were not part of their agreement.

Finally in early December 1982, Willi met with Richartz in California and executed a written letter agreement dated December 5, 1982. The parties to the agreement were Leema and Willi in his personal capacity. The agreement did not mention the Bank; the agreement was to be construed in accordance with California law.

By letter dated March 28, 1983, Willi enclosed a copy of the balance sheets of the companies plaintiff had invested in. According to plaintiff, these statements demonstrated that one company that it had purchased an interest in had assets of little more than $2 million as of December 31, 1982; yet, plaintiff states, defendant's June 25, 1982 telex indicated that it had $2½

million in assets. Plaintiff asserts that this value discrepancy was too large to have occurred between June and December and is evidence of the primary misrepresentation cited in plaintiff's complaint.

Under the December 5th agreement, Willi was obligated to deliver share certificates evidencing defendant's five percent interest. Valid certificates have never been delivered to plaintiff. Defendant Willi asserts that the failure to deliver the certificates resulted in part from errors in the preparation of the new certificates, requiring that they be redone. According to Willi, delay also resulted from disagreements unrelated to this lawsuit which he had with the other major shareholder. Willi recently purchased that shareholder's interest. Willi now asserts that new share certificates will be delivered in the near future.

Willi came to New York on August 30, 1983, to meet with Richartz, according to Willi to resolve the misunderstanding regarding the share certificates. Instead, Willi was served, both in his individual capacity and as a representative of the Bank, with the complaint in this action and a temporary order of attachment. The order, brought on by Order to Show Cause, restrained certain correspondent bank accounts maintained by the Bank at four New York banks. The parties thereafter stipulated to a release of the Bank's accounts, and in return the Bank deposited $500,000 in a special account at the Chase Manhattan Bank. The temporary order was modified to apply only to this Chase account.

Plaintiff now moves to confirm the order of attachment. Defendant Bank seeks a denial of the order and a dismissal of the complaint for, *inter alia,* failure to plead fraud with particularity, failure to state a claim against the Bank, and lack of personal jurisdiction and venue. I turn first to defendant's claim of lack of personal jurisdiction.

To exercise personal jurisdiction over the Bank consonant with the Constitution's due process clause, the "minimum contacts" test of *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), must be met. *See Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir.1972). This test is one of "reasonableness" or "fairness"; the defendant's contacts must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of the other relevant factors, including the forum's ... interest in adjudicating the dispute ...." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The relevant forum in this securities context is the United States. *See Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974). Indisputably, the United States has an interest in adjudicating this securities law dispute. However, it would be neither reasonable nor fair to require the Bank to defend the action here. The Bank has provided an uncontroverted affidavit by its Managing Director, Bernd J. Fischer, which lays out the limited extent of the Bank's contact with the United States:

2. Handelskredit-Bank is a banking corporation organized and existing under the laws of Switzerland with its principal and only place of business in Zurich, Switzerland.

a) Handelskredit-Bank does not maintain a branch, agency or office in the United States of America (USA) and has no branch, agency or office organized or licensed under any law of the USA.

b) Handelskredit-Bank has not qualified or been licensed to do business or banking business in the USA and does not maintain any employee or agent for the transaction of any business or banking business in the USA.

c) Handelskredit-Bank does not maintain a mail box, or a telephone listing in the USA although it does maintain certain correspondent bank accounts with Chase Manhattan Bank, N.A., Swiss Bank Corporation, Bank America International and J. Henry Schroeder Bank Trust Co. These correspondent accounts are employed solely to facilitate international banking transactions.

d) Handelskredit-Bank does not advertise in the USA.

e) Handelskredit-Bank derives no substantial revenues from goods used or consumed or services rendered in the USA.

f) Handelskredit-Bank does not own, possess, lease, use or have an interest in any real estate in the USA.

g) Handelskredit-Bank neither does nor transacts any business or banking business in the USA.

Supplemental Affidavit of the Bank In Support of Motion to Dismiss. Nonetheless, plaintiff contends that it would like to conduct discovery to determine whether the bank has sufficient contacts with the United States. Mere speculation, however, in the face of affidavit evidence conclusively to the contrary, necessitates denying plaintiff's request. *See* Fed.R.Civ.P. 56(e); *cf. Marks v. U.S. Department of Justice,* 578 F.2d 261, 263 (9th Cir.1978) ("[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."). Plaintiff had no substantive basis for believing that personal jurisdiction existed when it commenced this suit, and it is inappropriate to grant them the opportunity to conduct a fishing expedition in an attempt to manufacture such a basis.

Furthermore, Richartz described the Bank's supposed role in the contract in the following vague manner:

[Richartz had] understood ... or believed that [the Bank] was to be involved in the transaction in a fiduciary capacity. While the exact limits of the Bank's role were not fixed, [he] understood that the Bank would at least hold shares in the Costa Rican companies, accept Leema's payments, and not pay such funds over until share certificates and financial

statements were delivered and the agreements were documented, apply Leema's payments to the proper Costa Rican companies.

Supplemental Affidavit of Richartz at 1–2. It is significant that the only affirmative conduct allegedly required of the Bank in connection with the contract apparently was to carry out certain administrative obligations in Switzerland. There was no connection to the United States.[1]

Documentary evidence submitted by the parties also supports my conclusion. For example, the December 5th agreement evidencing the parameters of the Leema-Willi transactions, as I have noted, no where mentions the Bank or suggests that the Bank in any way was engaged in the discussions taking place in various parts of the world. Furthermore, plaintiff's own proposed contract dated August 16, 1982, see Bank's Notice of Motion to Dismiss, Exh. 5, contained no explicit or implicit role for the Bank. It is bereft of even any assertion of a connection between the Bank and the contact or the Bank and the United States.

What is left, thus, is the Bank's mere maintenance of correspondent bank accounts to facilitate international financial transactions or money transfers. This is not enough to confer this court with personal jurisdiction over the defendant, especially where, as here, the accounts are unrelated to the fraud alleged. Plaintiffs finally proffers one last-ditch argument that in any case there is jurisdiction over the Bank in California. Plaintiffs, however, say nothing more. They have provided even less information that would suggest that there was jurisdiction over the Bank in California. Their blanket statement, therefore, cannot confer personal jurisdiction over the Bank; specific facts in support of the statement are necessary. Accordingly, the lack of personal jurisdiction requires the dismissal of the complaint as against the Bank.

■ A second reason necessitates dismissal of this action against the Bank. Under section 27 of the 1934 Act, 15 U.S.C. § 78aa, venue is proper in the district in which "any act or transaction constituting the violation occurred." The act or transaction committed within the district need not constitute the core of the violation, see Sohns v. Dahl, 392 F.Supp. 1208, 1215 (W.D.Va.1975), but should be "an important step," International Controls Corp. v. Vesco, 490 F.2d 1334, 1347 (2d Cir.), cert. denied, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), or at least be more than an " 'immaterial part of the alleged violations.' " S–G Securities, Inc. v. Fuqua Investment Co., 466 F.Supp. 1114, 1121 (D.Mass.1979) (quoting Sohns v. Dahl ). Here, there is no material or important step alleged to have occurred in the Southern District of New York.

The only act of any kind related to the instant controversy was Leema's wire transfer of the second $250,000 payment to one of the Bank's New York correspondent accounts. This act, however, is not material. The principal allegation of misconduct concerns the purported overvaluation of the Costa Rican companies' assets. The payment could have been made anywhere and it would not have changed the nature of plaintiffs' allegations; payment also would not confer personal jurisdiction over the Bank just anywhere. Moreover, the Bank's alleged misconduct—as far as one can tell—concerns acts, or the failure to act in various places, none of which include New York. In short, plaintiffs have not established venue over the defendant Bank, as well as failing to obtain personal jurisdiction over it.

It is obviously unnecessary to reach the Bank's other claimed bases for dismissing

---

**1.** The only connection between the alleged fraud, the Bank, and the United States was the Bank's passive receipt of the second $250,000 payment at one of the New York correspondent bank accounts. This transfer could have been made to an account anywhere in the United States, or anywhere in the world for that matter. That alone, however, obviously would not confer personal jurisdiction over the defendant in that jurisdiction automatically. I turn to this incidental event below.

the complaint. I note, however, that this is not meant to suggest that they may not be equally meritorious. In fact, I have intimated previously in this decision that plaintiffs' claim that the Bank acted fraudulently may not be adequately particularized. Furthermore, viewing the documentary evidence before me, I have serious reservations about whether plaintiff would be entitled to an order of attachment. Entitlement to such an order is dependent on establishing "probability that [plaintiff] will succeed on the merits." N.Y.Civ. Prac.Law and Rules § 6223(b) (McKinneys 1980). In any case, plaintiffs' motion to confirm the order of attachment is denied, and the Bank's motion to vacate the attachment order and to dismiss the complaint is granted on the grounds already set out in this memorandum.

SO ORDERED.