### I.M.D. USA, INC., Plaintiff,

v.

### Shai SHALIT, Defendant.

### No. 00CIV0540(LAK).

United States District Court,
S.D. New York.

April 14, 2000.

Samuel M. Stone, Stone & Stone, New York City, for Plaintiff.

Alan Wasser, Flower, Medalie & Markowitz, Oyster Bay, NY, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This matter is before the Court on defendant's motion to dismiss for lack of personal jurisdiction and proper venue or, alternatively, to transfer the action to the District of South Carolina.

*Facts*

Plaintiff I.M.D. USA, Inc. ("IMD") is a diamond wholesaler located in New York City. In August 1998, one of its officers met the defendant, Shai Shalit, at a social event in Brooklyn which led to an agreement pursuant to which IMD would consign diamonds to Shalit in South Carolina for sale by him at prices approved by IMD. Upon sale of the diamonds, Shalit either would remit, or cause the purchaser to remit, the proceeds to IMD. IMD in exchange paid Shalit $200 per week for out of pocket expenses and a commission on sales. Over the ensuing year, IMD made a number of shipments, valued at $5,000 to $15,000 each, to Shalit, and the arrangement proceeded as planned.

In August 1999, Shalit again came to New York. During the visit, the parties agreed that IMD would expand the volume of diamonds entrusted to Shalit for sale and in fact entrusted to him stones worth in excess of $110,000. IMD has brought this action in consequence of its contention that Shalit has paid for or returned stones worth only about $30,000 and has refused either to pay for or return the balance.

The complaint contains four claims for relief. The first and second are for breach of contract, the third conversion, and the fourth unjust enrichment. It seeks damages and return of the missing diamonds. Jurisdiction is based on diversity of citizenship.

## Discussion

■ Section 1391(a) of the Judicial Code, as amended,[1] provides as follows:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

Shalit contends that this statute must be read in a hierarchical or disjunctive fashion, e.g., that clause (2) operates only if clause (1) is not satisfied. As he is the only defendant and a resident of South Carolina, he therefore argues that clause (2) does not apply here and that South Carolina is the only proper venue in this case. He relies exclusively on *Dashman v. Peter Letterese and Associates, Inc.*,[2] in which another judge of this Court reached that conclusion.

*Dashman* and the parallel Section 1391(b) cases upon which it relied are based on the history of the statute. Until 1963, venue in most cases was based entirely on the residence either of all defendants or of all plaintiffs and all defendants, depending upon whether jurisdiction was based on diversity or the presence of a federal question. This created difficulties in cases in which multiple parties on one or both sides of the case were not residents of the same judicial district, thus creating a so-called "venue gap"–situations in which subject matter jurisdiction existed but there was no proper venue. Congress subsequently amended Section 1391 in 1963, 1966, and 1990, ultimately adding clause (2) in its present form. Focusing on language in *Leroy v. Great Western United Corp.*[3] to the effect that the purpose of the 1966 amendment was to close the venue gap, *Dashman* and its progenitors reasoned that clause (2) is applicable only where venue could not be laid in any district under clause (1).[4]

*Dashman* and cases to similar effect have met with only limited acceptance. The best known commentators on federal practice reject them as unduly restrictive.[5] Another judge in this district recently held that venue is proper if any of the clauses of Section 1391(b) is satisfied,[6] a result directly inconsistent with the rationale of *Dashman.* And this seems to be the sounder view.

For one thing, the language of Sections 1391(a) and (b) is crystal clear. Both make it plain that venue is appropriate if any of their three clauses is satisfied. And where the language of the statute is so clear, resort to even the most explicit legislative history simply is inappropriate.[7] Moreover, the legislative history of the amendments to Section 1391 does not support the view that Congress intended to do nothing more than close the so-called venue gap.[8] In consequence, this Court rejects Shalit's contention that venue in this

1.  28 U.S.C. § 1391(a).

2.  999 F.Supp. 553 (S.D.N.Y.1998).

3.  443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

4.  *E.g., Dashman,* 999 F.Supp. at 554.

5.  17 James W. Moore, Moore's Federal Practice § 110.04[3] (1999) ("Moore"); 15 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Jurisdic-

tion § 3806, at 53–54 (1986 & Supp.1999) ("Wright").

6.  *Hall v. South Orange,* 89 F.Supp.2d 488, 490 (S.D.N.Y. 2000)

7.  *See, e.g., Dellmuth v. Muth,* 491 U.S. 223, 230, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989); *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961).

8.  *See* Wright § 3806, at 43–44.

case may be supported only by clause (1). Accordingly, the question becomes whether a substantial part of the events or omissions giving rise to the claim occurred in this district.

■ It is undisputed that the relationship that resulted in IMD entrusting the diamonds in question to Shalit was formed serendipitously in Brooklyn (the Eastern District of New York) and expanded at a meeting in this district. It is equally undisputed that Shalit had the stones in South Carolina and it is in South Carolina that he has refused either to return or pay for them. Moreover, it seems that the intention to fail to do so was formed in South Carolina, as IMD claims that the real problem here is that Shalit's wife started divorce proceedings against him and that Shalit diverted money from his sales of the diamonds to satisfy his estranged wife's claims for support and maintenance.[9] Thus, there is no suggestion that Shalit, while in New York, tricked IMD into entrusting the goods to him. Rather, defendant seems to acknowledge that everything was fine until the matrimonial dispute began in South Carolina.

The words "substantial part of the events or omissions giving rise to the claim" could be read to include the New York meetings between IMD and Shalit without undue violence to the English language in the sense that those meetings were an indispensable part of the chain of events that led to Shalit's alleged default. But that seems too facile a view. An almost infinite series of events were necessary historical antecedents of Shalit's alleged default. The question is a matter of legal policy–just how closely related to the alleged default must an event be in order to be regarded as an event or omission giving rise to the claim? Indeed, the prob-

lem is analogous to that of proximate cause in the law of torts. There the law does not recognize as proximate, and therefore legal, causes of a wrong all events but for which the wrong would not have occurred. Rather, it limits those for which the law will afford a remedy according to pragmatic policy considerations.[10]

The Supreme Court and the Second Circuit have erected some guideposts pointing the direction in which to proceed. In *Leroy*, which was decided under a prior version of Section 1391, the Court observed that factors informing the determination of the district in which a cause of action arose included the limited purpose of that clause of the statute, the protection of defendants against unfair or inconvenient trial locations, familiarity of judges with the controlling law, and the desirability of limiting to one the number of permissible venues.[11] It indicated also that the plaintiff's convenience is not a relevant factor.[12] The 1990 amendment to the statute disapproved of the Court's discouragement of multiple venues.[13] But our Court of Appeals subsequently has said that *Leroy* in all other respects "remain[s an] important source[ ] of guidance." [14] Moreover, it has made clear its view that the 1990 amendment effected "at most a marginal expansion of the venue provision." [15]

In this case, New York plainly is a far less convenient forum for Shalit than South Carolina, although the significance of that fact is undercut somewhat by the fact that he twice voluntarily came to New York, once in specific pursuit of an expanded business relationship with the New York plaintiff. The evidence concerning the present whereabouts of IMD's diamonds or their proceeds all is in South Carolina. Judicial familiarity with governing law is of no real significance in this

---

9. Meshulem Aff. ¶ 6.

10. *See, e.g., Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928).

11. 443 U.S. at 183–86, 99 S.Ct. 2710.

12. *Id.* at 183, 99 S.Ct. 2710.

13. *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992).

14. *Id.*

15. *Id.*

**318**

simple commercial dispute, quite unlike the situation in *Leroy,* which involved construction of a novel state antitakeover statute. Moreover, the fact that the events and omissions most closely related to the alleged breach–Shalit's failure to pay for or return the diamonds–unmistakably occurred in South Carolina is material, as the focus under Section 1391(a)(2) is on the activities of the defendant, not the plaintiff.[16] Indeed, in *Friedman v. Revenue Management of New York, Inc.,*[17] the Court of Appeals affirmed the dismissal for improper venue of a claim against a New York corporation, among other defendants, that collected money from New York debtors because all of the alleged misconduct and evidence were located elsewhere, holding that the New York connections did not amount to a substantial part of the events or omissions giving rise to the action.

Taking all of these considerations into account, the Court holds that substantial events and omissions giving rise to the causes of action in this complaint did not occur in this District, but did occur in the District of South Carolina. Accordingly, venue is not properly laid here, but would be properly laid in that district.

### Conclusion

For the foregoing reasons, defendant's motion is granted to the extent that the Court concludes that venue is improper in this Court. As this action might have been brought there, the Court transfers this action to the District of South Carolina pursuant to 28 U.S.C. § 1406(a). This disposition makes it unnecessary to consider Shalit's contention that the Court lacks jurisdiction over his person, as he concededly is subject to jurisdiction in South Carolina.

SO ORDERED.

---

**16.** 17 MOORE § 110.04[1], at 110–42 & n. 6.

**17.** 38 F.3d 668 (2d Cir.1994).