CONCESIONARIA DHM, S.A. Plaintiff,

v.

INTERNATIONAL FINANCE CORPO-RATION and Corporacion Andina De Fomento, Defendants.

No. 03 Civ. 845(JGK).

United States District Court, S.D. New York.

March 6, 2004.

---

Mark Stephen Sullivan, Dorsey & Whitney, L.L.P., New York, NY, for plaintiff.

James Millard Davis, Fulbright & Jaworski L.L.P., New York, NY, for defendant.

## OPINION and ORDER

KOELTL, District Judge.

The defendants, International Finance Corporation ("IFC") and Corporacion Andina de Fomento ("CAF"), are international organizations that entered into two separate loan agreements with the plaintiff, Concesionaria DHM, S.A. ("DHM"), to provide partial financing for the plaintiff's toll road construction project in Ecuador. The plaintiff sued the defendants for breach of contract and breach of an implied covenant of good faith and fair dealing after each defendant refused to make disbursements allegedly due under the respective loan agreements. Both defendants have brought motions to dismiss based on improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, and CAF has also moved to dismiss on the grounds of *forum non conveniens*. Both parties, in the alternative, move to dismiss the causes of action for breach of good faith and fair dealing for failure to state a claim pursuant to Rule 12(b)(6).[1]

## I.

On a motion to dismiss, the allegations in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998); *Cohen v. Koenig*, 25 F.3d 1168, 1172–73 (2d Cir.1994).

A court generally may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435, 437 (S.D.N.Y. 2001). In particular, in deciding a motion to dismiss for improper venue, the "court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *E.P.A. ex rel. McKeown v. Port Authority*, 162 F.Supp.2d 173, 183 (S.D.N.Y.2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1352 (1990 & Supp.1999)); *Burrell v. State Farm Fire & Cas. Co.*, No. 00 Civ. 5733, 2001 WL 797461, at *3 (S.D.N.Y. July 12, 2001) (stating that in deciding motion for improper venue "a court may consider facts outside the pleading" and should view facts viewed in light most favorable to plaintiff). The relevant facts, as alleged in the Complaint and in the affidavits and declarations submitted by the parties in connection with the current motions, are as follows.

DHM is an Ecuadorian special purpose company created to enter into a toll road concession contract with the Government of Ecuador. (Compl.¶ 2.) DHM was organized by two foreign construction companies that are organized and existing under the laws of the Kingdom of Spain and of Republic of Ecuador. (*Id.*) IFC, part of the World Bank Group, is an international organization that finances private sector projects in developing countries. (*Id.* ¶ 3.)

---

1. CAF initially moved to quash service of process but the parties have resolved the issue of service, and CAF withdrew that motion to dismiss at the argument of the motion.

IFC was established by Articles of Agreement among its member countries (*id.*) and is headquartered in Washington, D.C. (*See* Decl. of Pablo Berckholtz ("Berckholtz Decl.") ¶ 4.) CAF is an international organization that provides loans and guarantees for companies investing in development projects. (Compl.¶ 4.) CAF was established by an agreement of its member countries, including Ecuador, Bolivia, Colombia, Chile, Peru, and Venezuela. (*See id.;* Decl. of Luis Enrique Berrizbeitia ("Berrizbeitia Decl."), Ex. B at 1 (Agreement Establishing the Corporacion Andina de Fomento (English translation)).) CAF's headquarters is in Caracas, Venezuela. (Berrizbeitia Decl. ¶ 8.)

In the mid–1990s, Ecuador's Ministry of Public Works ("MOP"), through a competitive bidding process, awarded a toll road concession contract to DHM, whereby DHM would develop, maintain, and operate roads along the Ecuadorian coast. (*See* Compl. ¶¶ 7–9.) To provide partial financing for the project, DHM entered into separate loan agreements with IFC and CAF on August 13, 1998. (*Id.* ¶ 15.) Under the respective agreements, IFC agreed to lend § 26,500,000 in project financing, and CAF agreed to lend $12,600,000. (*See id.* ¶¶ 16–17.)

In connection with the drafting of the loan agreements and related agreements, DHM retained the Manhattan law firm Simpson Thatcher & Bartlett while IFC and CAF both retained Becker, Glynn, Melamed & Muffly ("Becker Glynn"), also a Manhattan law firm. (*See* Decl. of Antonio Gomez Encinas ("Gomez IFC Decl.") ¶¶ 3–4; Decl. of Antonio Gomez Encinas ("Gomez CAF Decl.") ¶¶ 4–5.) Becker Glynn provided services out of its New York office, including reviewing and commenting on various drafts of the loan agreements. (*See* Gomez IFC Decl. ¶ 4; Gomez CAF Decl. ¶ 4.) According to the plaintiff, which has provided copies of Becker Glynn invoices, the law firm conferred with IFC and CAF regarding the agreements through telephone conferences, e-mail, and other correspondence. (*See* Gomez IFC Decl. ¶ 4 & Ex. B; Gomez CAF Decl. ¶ 4 & Ex. B.) The plaintiff states that, pursuant to the defendants' instructions, it paid for Becker Glynn's services on behalf of IFC and CAF by means of a money transfer to Becker Glynn's bank account in New York, New York. (*See* Gomez IFC Decl. ¶¶ 4–5; Gomez CAF Decl. ¶¶ 4–5.)

The in-person negotiations, as alleged by the defendants, did not occur in New York, and instead took place largely at CAF's main offices in Caracas, Venezuela, and at IFC's offices in Washington, D.C. (*See* Berckholtz Decl. ¶ 9; Decl. of Sergio Bracho ("Bracho Decl.") ¶ 9.) Other meetings occurred in locations such as Madrid, Spain, at the offices of DHM's principal shareholder, and Ecuador, at the offices of the MOP and at the offices of DHM's other founding shareholder. (*See* Berckholtz Decl. ¶ 9; Bracho Decl. ¶ 10.) The defendants allege that all written and oral communications between the parties also originated in and were directed to those locations. (*See* Berckholtz Decl. ¶ 10; Bracho Decl. ¶ 11.) On August 13, 1998, the loan agreements were executed at a closing in Washington, D.C. attended by representatives of DHM, IFC, and CAF. (*See* Berckholtz Decl. ¶ 11; Bracho Decl. ¶ 12.)

Under the agreements, the disbursement and repayments were to be made as follows. IFC agreed to make no more than eight disbursements "at a correspondent bank in The City of New York." (IFC Loan Agreement (Part I) § 3.05.) All payments by DHM to IFC were to be made to an account at Citibank, N.A., New York, New York. (*Id.* § 3.08.) CAF agreed to make up to four disbursements "to the

account as from time to time may be designated by the Company [DHM] in writing and as accepted by CAF." (*See* CAF Loan Agreement § 3.02.) DHM designated its bank account at Citibank at 111 Wall Street in New York, New York as the account to which CAF should disburse the funds. (Gomez CAF Decl. ¶ 6.) While the CAF Loan Agreement originally provided for DHM's payments to CAF be made to a bank account in Stamford, Connecticut, CAF formally revised the instructions to direct payments to an account at 7 World Trade Center, New York, New York. (*See id.* ¶ 8 & Ex. F.) DHM made a payment of certain fees to that account in New York in September 1999. (*Id.* ¶ 9 & Ex. G.)

Both loan agreements provided that they would be governed by New York law and contained permissive forum selection clauses in which DHM agreed to submit to the "non-exclusive jurisdiction" of courts in New York. (*See* IFC Loan Agreement (Part I) § 7.01(b)-(c) (specifying "the courts of the State of New York or of the United States of America located in the Southern District of New York" as courts in which DHM agreed it could be sued); CAF Loan Agreement § 8.06(b) (requiring DHM to submit to suit in any "court of the State of New York or court of the United States of America sitting in the State of New York").) The loan agreements explicitly required DHM to waive any defense that New York was an inconvenient forum and any objection to "the laying of venue" in the designated New York courts. (IFC Loan Agreement (Part I) § 7.01(g); CAF Loan Agreement § 8.06(b), (f).) Both agreements required DHM to designate CT Corporation System of New York, New York as an agent authorized to receive service of process for any action proceeding in New York arising out of the loan agreements or any related agreements. (IFC Loan Agreement (Part I) § 7.01(c); CAF Loan Agreement § 8.06(b).) The agreements did not re-

quire IFC or CAF to agree that they could be sued in New York.

One of the related agreements was the Account Assignment Agreement, which DHM was required to execute as a condition to the IFC and CAF loan agreements and which appointed Bankers Trust Company as a collateral agent. (*See* Gomez IFC Decl. ¶ 5; Gomez CAF Decl. ¶ 10.) DHM was required to establish a "debt service reserve account" and a "large repairs reserve account" at Bankers Trust Company, and it gave IFC and CAF security interests in those accounts. (*See* Gomez IFC Decl. ¶ 7; Gomez CAF Decl. ¶ 11.) Bankers Trust Company is a bank that was headquartered in New York and that negotiated the Account Assignment Agreement with the assistance of New York counsel. (*See* Gomez IFC Decl. ¶ 6; Gomez CAF Decl. ¶ 10.) As directed by the Assignment Agreement, the plaintiff paid for the services rendered by Bankers Trust Company's counsel through a money transfer to that counsel's New York bank account. (*See* Gomez IFC Decl. ¶ 6; Gomez CAF Decl. ¶ 10.) Bankers Trust Company's fees as collateral agent were paid by the plaintiff to one of Bankers Trust Company's New York bank accounts. (*See* Gomez IFC Decl. ¶ 6; Gomez CAF Decl. ¶ 11.)

In April 1999 IFC and CAF made their first disbursements under the loan agreements. IFC disbursed $6,752,000 and CAF disbursed $3,210,000 to DHM's designated account at Citibank, N.A., at 111 Wall Street, New York, New York. (*See* Compl. ¶ 23; Gomez IFC Decl. ¶ 9; Gomez CAF Decl. ¶ 6.) In November 1999, DHM contacted IFC and CAF to request a second disbursement to DHM's designated account in New York. (Compl. ¶ 29.) Neither IFC nor CAF made the disbursements requested, and DHM has alleged that their failure to make the disburse-

ments was unjustified and constituted a breach of the loan agreements. On February 5, 2003, DHM sued IFC and CAF in this Court for breach of contract and breach of an implied covenant of good faith and fair dealing. DHM's Complaint asserted jurisdiction pursuant to 28 U.S.C. § 1331 and 22 U.S.C. § 282f, which provides the federal courts with original jurisdiction over any action in which IFC is a party. (*Id.* ¶ 5.) The parties also agree that there is jurisdiction in this Court pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330(a), because CAF is an agent or instrumentality of a foreign state. *See* 28 U.S.C. § 1603.[2]

## III.

IFC and CAF move to dismiss the action for improper venue pursuant to Rule (12)(b)(3). The plaintiff bears the burden of showing that venue is proper once an objection is raised, and it must show that venue is proper for each claim against each defendant. *PI, Inc. v. Quality Prod., Inc.,* 907 F.Supp. 752, 757 (S.D.N.Y.1995).

While different venue provisions apply to each of the defendants, the relevant provisions use the same statutory language and require the same analysis. With respect to IFC, the relevant venue provision is 28 U.S.C. § 1391(b) because the case is not founded solely on diversity jurisdiction. In particular, the parties agree that the provision at issue is § 1391(b)(2), which allows an action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." With respect to CAF, the parties agree that CAF is an agent of a foreign state as defined by the FSIA and that the relevant venue provision is 28 U.S.C. § 1391(f)(1). Section 1391(f)(1) also allows for venue in the judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(f)(1). The same analysis, therefore, applies to both defendants. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 153 (2d Cir.2001) (observing that § 1391(b)(2) and § 1391(f)(1) use identical statutory language and require same analysis).

The language of § 1391(b)(2) and § 1391(f)(1) requires courts to apply a substantial contacts test. *See PI, Inc.,* 907 F.Supp. at 757 (applying § 1391(a)(2), which also uses "substantial part of the events or omissions" language); *Zitman v. Tucker,* No. 94 Civ. 6658, 1994 WL 713693, at *1 (S.D.N.Y. Dec.21, 1994). In evaluating venue for claims in a breach of contract action, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc.,* 907 F.Supp. at 757–58, *quoted by Tonoga, Ltd. v. Ministry of Public Works and Housing of Kingdom of Saudi Arabia,* 135 F.Supp.2d 350, 359 (N.D.N.Y.2001) (involving § 1391(f)(1)); *Jordache Enter., Inc. v. Brobeck, Phleger & Harrison,* No. 92 Civ. 9002, 1994 WL

2. Section 1603(a) defines a "foreign state" as including "an agency or instrumentality of a foreign state as defined in subsection (b)." As stated in CAF's papers, CAF is an "agency or instrumentality of a foreign state" as defined by 28 U.S.C. 1603(b) because (1) it is a separate legal (corporate) person established under an international treaty; (2) a majority of CAF's shares are owned by foreign states, including Bolivia, Ecuador, Peru, and Venezuela; and (3) it is not a citizen of a State of the United States and was created under a treaty and not the laws of any third country. *See* § 1603(b)(1)-(3); (Berrizbeitia Decl. ¶¶ 3–5); *cf. Mangattu v. M/V Ibn Hayyan,* 35 F.3d 205, 207–08 (5th Cir.1996) (interpreting § 1603(b)(2) to allow pooling of multiple foreign states to satisfy majority shareholder requirement).

74860, at *4 (S.D.N.Y. Mar.7, 1994). Venue is appropriate in each district where a substantial part of the events or omissions occurred, and thus venue may appropriate in this district even if a greater portion of events occurred elsewhere. *See Astor Holdings, Inc. v. Roski*, No. 01 Civ.1905, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002); *Jordache*, 1994 WL 74860, at *3.

■ The plaintiff argues that venue in this Court is proper because contract negotiations took place between the defendants and legal counsel in New York. The plaintiff further argues that the defendants' performance and breaches-the failure to disburse the funds requested-occurred in New York because the funds were supposed to be disbursed to DHM's contractually designated New York bank account. The defendants downplay the extent of negotiations in New York and argue that the breaches occurred in Washington D.C. and Venezuela, where IFC and CAF, respectively, made the decisions not to disburse the funds.

First, the plaintiff has put forward sufficient allegations that, if viewed in a light most favorable to the plaintiff, establish that activity in New York played a substantial role in the formation of the loan agreements. It is clear that the defendants hired a New York law firm, Becker Glynn, to review and comment on the loan agreements. Becker Glynn communicated with the defendants from New York via telephone, e-mail, and mail. It appears that Becker Glynn did play a direct role in negotiations with the plaintiffs from New York and that party-to-party negotiations and communications occurred in and between locations such as Washington, D.C., Venezuela, Spain, and Ecuador. While negotiations occurred in and between various places, the plaintiff and the defendants drafted and developed the loan agreement with the assistance of New York counsel working from New York, and the plaintiff made payments to New York bank accounts for the legal services for all parties. *See TBV Holdings Ltd. v. Schey*, No. 02 Civ. 1122, 2002 WL 1733649, at *1 (S.D.N.Y. July 26, 2002) (stating that courts consider where contracts were drafted as well as negotiated and executed). The plaintiff has submitted letters from IFC and CAF directing the plaintiff to make payments directly to Becker Glynn in New York. (*See* Gomez IFC Decl., Ex. B; Gomez CAF Decl., Ex. B.). In addition, a substantial part of the negotiation and formation of the Account Assignment Agreement, which involved a New York bank and was a condition precedent to the obligations under the loan agreements, appears to have taken place in New York. (*See* Gomez CAF Decl. ¶ 10.)

The defendants have attempted to minimize the extent of the activity that occurred in New York. Based solely on the papers submitted in connection with this motion, it is difficult to evaluate the relative importance of the activity in New York compared to activity in other locations and to other events leading to the cause of action. However, because this is a motion to dismiss, all reasonable inferences must be drawn in favor of the plaintiff and resolved against the defendants. New York therefore can be considered a substantial situs for the formation of the loan agreements. *Cf. Sacody Tech. Inc. v. Avant, Inc.*, 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) (finding that "substantial part" standard "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and cause of action").

Second, the plaintiff argues that the cause of action arose in this district because the defendants' alleged breach occurred in New York City, where the disbursements were allegedly due. The

defendants respond that the alleged breaches occurred in Washington, D.C. and Caracas, Venezuela, the headquarters of IFC and CAF respectively, where the decisions not to disburse the funds were made. The defendants cite cases for the proposition that in a contract action for failure to make a payment, the breach occurs where the decision to withhold payment is made. *See Am. Motorists Ins. Co. v. Roller Bearing Co. of Am.*, No. 99 Civ. 9133, 2001 WL 170658, at *7-*8 (S.D.N.Y. Feb.21, 2001); *I.M.D. USA, Inc. v. Shalit*, 92 F.Supp.2d 315, 317–18 (S.D.N.Y.2000); *see also Creative Socio–Medics Corp. v. City of Richmond*, 219 F.Supp.2d 300, 309 (E.D.N.Y.2002) (stating that failure to make payments from Virginia is "an omission that took place in Virginia").

Other cases, however, indicate that the failure to transfer funds or make payments to an account in New York City is a breach that occurs in New York City. *See Saltzman v. La. Auction Exch., Inc.*, 997 F.Supp. 537, 541 (S.D.N.Y.1998) (identifying as support for New York venue fact that "payment under the terms of the letter agreement was due to plaintiff in New York"); *Nova Int'l, Inc. v. Am. Express Bank, Ltd.*, No. 94 Civ. 8536, 1996 WL 39317, at *8 (S.D.N.Y. Jan.31, 1996) (finding failure to issue letter of credit and transfer funds to plaintiff's account in New York City sufficient to establish venue); *cf. JSP Int'l v. Tri–Tech Group, Inc.*, No. 95 Civ. 2422, 1995 WL 413299, at *5 (S.D.N.Y. July 13, 1995) (stating that delivery of nonconforming goods is breach that occurs where goods are delivered).

It is unnecessary to designate one location as the place in which the breach "occurred" as a matter of law because New York City was clearly the contractually designated place where performance by the defendants was due and where performance by both parties had occurred

prior to the breach. *See Irrigation Tech. Leasing Assocs. v. Superior Farming Co.*, No. 90 Civ. 7482, 1991 WL 274479, at *2 (S.D.N.Y. Dec.10, 1991) (emphasizing place of performance over place of breach and determining that venue was proper in New York where defendant "was under a duty to make periodic lease payments in New York" and thus "had a continuing obligation to perform in New York"); *see also Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir.1986) (adopting rule that breach of contract claim arises for venue purposes at "the place of intended performance rather than the place of repudiation"). With respect to IFC, its loan agreement expressly directed payments from and disbursements to DHM to be made in New York city bank accounts. (*See* IFC Loan Agreement (Part I) §§ 3.05, 3.08.) While the CAF Loan Agreement did not specify a location for the disbursements to DHM, it gave DHM the ability to designate an account in writing, subject to CAF's acceptance. (CAF Loan Agreement § 3.02.) DHM designated a New York City bank in its disbursement requests, and CAF made the first disbursement to that account. (*See* Gomez CAF Decl. ¶ 6 & Exs. D, E.) Moreover, CAF explicitly and formally changed its Loan Agreement to direct DHM to make payments to a bank account in this District. (*See id.* ¶ 8 & Ex. F.)

The defendants downplay the significance of the payments to the New York accounts and cite *Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533 (S.D.N.Y.1983), where the court dismissed a complaint against a Swiss bank for lack of personal jurisdiction and improper venue. In that case, the only connection between the defendant bank, the United States, and the cause of action was "the Bank's passive receipt of [a] payment at one of the New York correspondent bank accounts." *Id.* at 1537 n. 1. The court specifically noted

that "[t]his transfer could have been made to an account anywhere in the United States, or anywhere in the world for that matter." *Id.* Unlike in *Leema,* where the defendant bank passively received money through an undesignated New York bank, IFC and CAF both affirmatively selected New York as a location for making and/or receiving payments. Both defendants overtly performed under the loan agreements by making disbursements to DHM's account in this district. *Cf. Leema,* 575 F.Supp. at 1537 (explaining that "the only affirmative conduct allegedly required of the Bank ... was to carry out certain administrative obligations in Switzerland. There was no connection to the United States.")

The systematic and explicit designation of New York City bank accounts in this case distinguishes it from *Leema,* where a single bank payment was fortuitously and unilaterally directed to New York by the plaintiff. It is clear that, while the physical activity motivating the deals occurred in Ecuador, New York City was the hub for the financial transfers that were at the core of the parties' bilateral duties under the loan agreements. The agreements primarily involve financial transactions that were designated to occur through New York City banks and were drafted, at least in part, with the help of New York City counsel. It was the activities of the defendants in participating in the selection of New York bank accounts and for failing to make payments into those accounts, together with the other activities in negotiating the agreements, that have drawn them into this District. Drawing all reasonable inferences in favor of the plaintiffs, the Court concludes that a substantial part of the events and omissions that gave rise to the causes of action occurred in New York City.[3]

The motions to dismiss for improper venue are therefore denied.

### III.

The defendant CAF also moves to dismiss the complaint pursuant to the doctrine of *forum non conveniens.* IFC has not made a similar motion. "[T]he doctrine of *forum non conveniens* contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court." *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 101 (2d Cir.2000). The Court of Appeals for the Second Circuit has established a three-step framework for resolving of a motion to dismiss based on *forum non conveniens* that involves: (1) determining the degree of deference to be afforded to the plaintiff's choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See Iragorri v. United Tech. Corp.,* 274 F.3d 65, 73–74 (2d Cir.2001) (en banc), *see generally Base Metal Trading, S.A. v. Russian Aluminum,* 253 F.Supp.2d 681,

---

**3.** DHM also argues that venue is proper for the claims against IFC based on § 1391(b)(1), which provides for venue in a judicial district where the defendants reside. 28 U.S.C. § 1391(b)(1). DHM claims that IFC resides in the Southern District of New York under § 1391(c), which provides that a defendant that is a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." 28 U.S.C. § 1391(c). IFC responds that pursuant to 22 U.S.C. § 282f, for the purposes of any action brought against IFC, IFC is deemed to be an inhabitant exclusively of the place in which its principal office in the United States is located: Washington, D.C. Because the Court finds that venue is proper under § 1391(b)(2), it does not need to reach the question of whether IFC can be deemed to reside in this District for purposes of § 1391(b)(1).

693–713 (S.D.N.Y.2003) (applying framework).

As an initial matter, the Court must determine the degree of deference that should be afforded to the plaintiff's choice of forum. *See Iragorri*, 274 F.3d at 70–73; *accord Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 498 (2d Cir.2002); *Base Metal Trading*, 253 F.Supp.2d at 693. The Supreme Court in *Gulf Oil* generally instructed that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. The Court of Appeals for the Second Circuit has interpreted *Gulf Oil* to mean that "a court reviewing a motion to dismiss for *forum non conveniens* should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" the factors discussed below. *Iragorri*, 274 F.3d at 71.

As the Court of Appeals explained in *Iragorri*, the degree of deference varies depending on the circumstances. While plaintiffs who file suit in the district in which they reside are entitled to great deference, less deference is owed to foreign citizens suing in the United States and U.S. residents suing outside of their home forum. *Id.* at 71. The Court of Appeals has announced a sliding scale approach where the "more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id.* at 71. The key to the analysis is distinguishing between a plaintiff's legitimate right to select a forum and mere forum-shopping that is designed to burden the defendants or to give the plaintiff a tactical advantage. *See id.* at 72–73. Therefore,

the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*. ... On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands....

*Id.* at 71–72 (footnotes omitted); *see also F.D. Import & Export Corp. v. M/V Reefer Sun*, No. 02 Civ. 2936, 2003 WL 21396658, at *3 (S.D.N.Y. June 17, 2003) ("In sum, courts should give greater deference to the plaintiff's chosen forum when the choice is based on legitimate factors ... and give less deference when the plaintiff is seeking a tactical advantage that may result from peculiar conditions....").

While DHM is not entitled to the deference owed to a citizen or resident of New York, it is clear that DHM's choice of forum is based on legally valid, *bona fide* reasons, is not motivated by pure forum-shopping, and commands a good degree of deference. The loan agreements designate New York law as the applicable law and all parties have operated, at least in part, through New York legal counsel. Significantly, the loan agreements contain permissive forum selection clauses requiring DHM to consent to suit in New York state court or in this Court. CAF is correct that such a clause does not mean, *per se*, that New York is a convenient forum for the defendant, nor does it change the structure of the *forum non conveniens* analysis. *See Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 979–80 (2d Cir.1993) (ruling that "normal forum non conveniens analysis is applicable" even though plaintiff sued in forum included in permissive forum selection clause). The

forum selection clause, however, must be considered evidence that DHM's venue selection has a *bona fide* connection to the loan agreements. The clause shows the plaintiff's choice of forum was not intended to burden the defendants or obtain some tactical advantage. Moreover, as CAF and the plaintiff agree, this is one of the only forums in which IFC and CAF can both be sued. It thus appears that the plaintiff's choice of forum was motivated largely by convenience, and the plaintiff's choice is thus entitled to deference.

The second step in the *Iragorri* framework requires the defendant to identify an adequate alternative forum where the defendants are amenable to process. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419; *Base Metal Trading,* 253 F.Supp.2d at 698. CAF has offered Venezuela and Ecuador as alternative fora. The plaintiff, however, persuasively argues that these alternatives are not adequate because IFC cannot be sued in either forum. The plaintiff cites case law indicating that a forum is not an adequate unless *all* defendants are subject to the alternative jurisdiction. *See PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998) (explaining that to grant motion to dismiss for *forum non conveniens,* court must find "that the litigation may be conducted elsewhere against all defendants"); *ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419, 426 (S.D.N.Y.1998) (stating that "the requirement that a defendant by subject to the jurisdiction of the alternative forum 'refers to all defendants'" (quoting *Madanes v. Madanes,* 981 F.Supp. 241, 265–66 (S.D.N.Y.1997))).

CAF does not offer any case law to support its argument that an alternative forum can be "adequate" even if not all defendants are subject to its jurisdiction and granting the motion would require the plaintiff to proceed through multiple suits.

Indeed, at the argument of the motions, counsel for CAF candidly appeared to concede that under the controlling case law, no alternative forum exists because there is no showing that both CAF and IFC could be sued in one alternative forum.

The Court therefore finds that the alternative fora offered by CAF are not adequate. The *forum non conveniens* motion can be denied on that basis. Even if Venezuela and Ecuador were adequate alternatives, the balance of private and public factors would weigh against CAF because granting the motion would require the plaintiff to pursue the case in two fora. *See Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839 (describing factors to balance); *Iragorri,* 274 F.3d at 73–74 (explaining private factors as involving "the convenience of the litigants" and public interest factors involving the administration of justice).

Given the deference owed to the plaintiff in this case and inconvenience and inefficiency caused by dividing the litigation, the defendant cannot show that the balance of factors is strongly in its favor. Based on the circumstances and the fact that the loan agreements required DHM to consent to venue in New York, there is a real suspicion that CAF is attempting to engage in forum shopping in order to burden the plaintiff. *See Iragorri,* 274 F.3d at 75 (warning that defendants may move for dismissal under *forum non conveniens* doctrine for same forum-shopping reasons that doctrine was meant to prevent, and recommending that courts approach such motions "with an appropriate degree of skepticism"). CAF's motion to dismiss on the doctrine of *forum non conveniens* is denied.

## IV.

■ In the alternative, both defendants have moved to dismiss the claims against them for breach of the covenant of good

faith and fair dealing. (*See* Compl. ¶¶ 56–65) (Third and Fourth Claims against IFC and CAF, respectively.) The defendants argue that the claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because they are duplicative of the breach of contract claims against each defendant. (*See* Compl. ¶¶ 48–55) (First and Second Claims against IFC and CAF, respectively.) Indeed, courts routinely dismiss a claim for breach of an implied covenant of good faith "as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." *TVT Records v. Island Def Jam Music Group*, 244 F.Supp.2d 263, 277 (S.D.N.Y.2003) (internal quotation omitted); *I.C.D. Holdings, S.A. v. Frankel*, 976 F.Supp. 234, 243–44 (S.D.N.Y.1997). The plaintiff can maintain its claim for breach of the implied covenant of fair dealing "only if it is based on allegations different than those underlying the accompanying breach of contract claim." *See TVT Records*, 244 F.Supp.2d at 278 (quoting *Siradas v. Chase Lincoln First Bank, N.A.*, No. 98 Civ. 4028, 1999 WL 787658, at *6 (S.D.N.Y. Sept.30, 1999)).

█ The plaintiff argues that its breach of implied covenant claim is distinct from the breach of contract claim. The breach of contract claim is based on the alleged refusal to disburse the funds as requested. The breach of implied covenant claim, the plaintiff asserts, is based on the defendants' alleged failure to notify the plaintiff in a timely manner of the refusal to disburse the funds or the reason for that refusal. The Complaint states that the second disbursement requests were sent November 18, 1999 and that in mid-December the defendants allegedly represented that the funds would be disbursed by January 15, 2000 once the plaintiff had provided certain requested financial data. (*See id.* ¶ 29, 31.) The plaintiff contends that in reliance on the defendants' representations, it continued to make substantial investments in the toll road construction project and that the defendants never made the disbursements nor did they notify the plaintiff that the disbursements would not be made. (*Id.* ¶ 34, 37.)

Even accepting the allegations in the Complaint as true, which the Court must do on a motion to dismiss, the plaintiff does not allege a distinct claim for breach of the implied covenant of good faith and fair dealing. Under New York law, the duty of good faith is an implied contractual term, and thus "breach of that duty is merely a breach of the underlying contract." *W.S.A. Inc. v. ACA Corp.*, No. 94 Civ. 1868, 1996 WL 551599, at *9 (S.D.N.Y. Sept.27, 1996) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992)). In this case, under the contract, the defendants allegedly had the express duty to make the disbursements. The failure to make those payments under all of circumstances was either a breach of the contract or not, but the covenant of good faith cannot add terms to the contract that do not exist. The course of conduct by the defendants from November 1999 through January 2000 goes to the alleged breach of that contract, including all of the terms of the contract. The predicate conduct for the claims is the same, despite the attempt to emphasize different aspects of the conduct in the implied covenant claim. *See Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 90 F.Supp.2d 401, 419 (S.D.N.Y.2000) (finding contract and implied covenant claims redundant where they "clearly rest[ed] on the same factual predicate-Deutsche Bank's alleged involvement in 1995 CFTC order"); *W.S.A., Inc.*, 1996 WL 551599, at *9 (rejecting plaintiff's attempt to bifurcate "its breach of contract claim, so as to place some of the allegations in support thereof in the category of 'breach of cove-

nant of fair dealing' "). Indeed, at the argument of the motions, the plaintiff conceded that the only purpose served by including the additional count was to attempt to ensure that the plaintiff would be able to admit evidence of the course of dealing among the parties. But that evidence will or will not be relevant to the breach of contract claim and adding a duplicative claim does not make the evidence more relevant.

The case cited by the plaintiff in support of its implied covenant claims is inapposite. In *Components Direct, Inc. v. European American Bank and Trust Co.*, 175 A.D.2d 227, 572 N.Y.S.2d 359 (App.Div.1991), the court found that the defendants breached an implied duty to notify the plaintiff of its decision to terminate the plaintiff's credit. *Id.* at 361. In that case, however, the creditor had an absolute right to terminate credit, and thus there was no alleged breach of an express contractual provision. That case comports with the principle that the implied covenant claim addresses situations where there is not a breach of contract, but where one party has attempted to undermine the contract or deprive the other of the benefit of the bargain. *See TVT Records*, 244 F.Supp.2d at 277. That is not the situation in this case, which is clearly based on the defendants' refusal to disburse funds under the loan agreements. The breach of implied covenant claims are thus redundant and are dismissed.

### Conclusion

For the reasons explained above, the defendants' motions to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure are **denied**. Defendant CAF's motion to dismiss for *forum non conveniens* is **denied**. The defendants' motions pursuant to Rule 12(b)(6) to dismiss as duplicative the plaintiff's claims for breach of the implied cove-

nant of good faith and fair dealing-Counts III and IV of Complaint-are **granted**.

**SO ORDERED.**